## Finley, et al. v. Rose, County Judge, et al.

(Decided June 15, 1915.)

### Appeal from Whitley Circuit Court.

1. Elections—Issual of Bonds for Road Purposes.—Under the Act of 1914 authorizing the submission to the voters of a county the question whether the fiscal court should issue county bonds for road and bridge purposes, it was not necessary that the petition for the election should lie over from one term of the county court to another term, before the court could call the election.

2. Elections—Mistake in Preparing Ballots—Correction by Clerk.— Where the ballots prepared by the county clerk for use in a road bond election, by a mistake of the clerk improperly stated the question to be voted upon, and the mistake was discovered after the ballots had been delivered to the election officers in time to have the mistake corrected, the clerk properly printed new ballots and substituted them in place of the defective ballots.

3. Elections—Deficiency of Ballots—When Clerk May Supply.—Where the deficiency in the ballots is due to the inadequacy of the law, the clerk is without power to correct them; but, where the deficiency is due to the act of an individual, either through inadvertence or fraud, the clerk may supply the deficiency in order that the election may properly proceed.

STEPHENS & STEELY for appellants.

BRYANT & LAWSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Affirming.

The petition in this case sought to enjoin the Whitley Fiscal Court from issuing road and bridge bonds of the face value of $250,000.00 pursuant to an election held in Whitley County on April 24th, 1915. At the election 3,153 votes were cast in favor of the bond issue, and 544 votes against it.

The circuit court sustained a demurrer to the petition, and subsequently dismissed it; and, from that order, the plaintiffs appeal.

It is stated in the brief for the appellees that the petition raises practically all the questions that were passed upon by this court in Walsh v. Asher, Judge, 163 Ky., 377, and Albright v. Ballard, Judge, 164 Ky., 747, which are known as the Bell County bond case and the Rockcastle County bond case, respectively, and one further question.

Upon an examination of the petition, however, we find only two objections there interposed to the validity of the bonds: (1) That the petition for the election was filed on January 29th, 1915, at a time when the Whitley County Court was not in session, and that the election was ordered on the first day of February, 1915, that being the first day of the February term of the Whitley County Court, and without laying the petition over for thirty days; and (2) that after the clerk of the Whitley County Court had caused the ballots to be printed and delivered to the several election officers, it was discovered that, by a printer's error, the ballots submitted to the voters the proposition whether they would authorize an indebtedness in the sum of "$250.00" instead of "$250,000.00;" whereupon the clerk caused new ballots to be printed so as to correct the error in the original ballots, and distributed the new ballots to the election officers in lieu of the original ballots, which were taken up by the clerk and destroyed.

In short, it is contended, under the first objection, that the Whitley County Court was without jurisdiction to order the election; and, under the second objection, that the county clerk was without authority to substitute the new ballots for the old ones, and that the election was, for both reasons, void.

We find no other question raised by the petition.

1. In Walsh v. Asher, Judge, 163 Ky., 377, and again in Albright v. Ballard, Judge, 164 Ky., 747, it was expressly held that under the act of 1914 it was not necessary that the petition for the election should lie over from one term of the county court to another term, before the court could call the election.

This question may, therefore, be treated as closed, under our present statute.

2. The second objection which questions the power of the county clerk to issue new ballots and substitute them for other ballots which had theretofore been delivered to the election officers, presents a more serious question. It is conceded that the statute grants, in terms, no such power to the clerk, and that if it exists at all, it is by implication only.

In the late case of Wallbrecht v. Ingram, 164 Ky., 472, there was a shortage of ballots at a precinct, and it was contended that the clerk had the right to furnish a greater number of ballots, in case of their need, than he was required to furnish by the statute.

In denying that power to the clerk, but in also recognizing his power to furnish ballots in certain exceptional cases, this court said:

"It has been suggested that a condition like this might be remedied if, upon a satisfactory showing made to the clerk before the ballots were printed by persons acquainted with the necessity for more ballots than the statute provides for, he should be authorized to exceed the statutory number and furnish any precinct what appeared, from the representations made to him, a sufficient number of extra ballots to accommodate the voters in the particular precinct.

"The difficulty, however, in adopting that suggested relief is to be found in the fact that it would operate to materially change the statute. The statute is simple and direct as well as mandatory in its nature, and we are not aware of any rule of law or authoritative precedent that would permit the clerk to furnish a larger number of ballots than the statute provides for.

"Under these circumstances, although recognizing that occasionally, as in this case, a failure to furnish a sufficient number of ballots may operate to deprive some persons of the right of suffrage, we do not feel at liberty to announce any remedy along the line suggested.

We think the safe course to pursue is to leave the matter as the legislature arranged it, subject, of course, to its power to make such changes as it may think proper.

"The application of what we have said on this subject is, of course, to be confined to the precise question before us, and we do not mean to hold that if by some misfortune, accident or fraud the ballots furnished by the clerk should be lost or destroyed or stolen, the clerk might not supply a sufficient number of ballots to take the place of those lost, destroyed or stolen, if he could do so in time to permit the election to be held in the manner provided by law."

The course suggested in the closing paragraph of the foregoing excerpt was based upon the language used by this court in Scholl v. Bell, 125 Ky., 750. In that case certain ballots were lost or stolen, and the clerk took steps to have them reprinted in order that the election might be held. Upon the advice of counsel, however, he declined to deliver the ballots, and they were not used.

In commenting upon that situation, we there said:

"But, to prevent similar confusion in the future, we deem it proper to add that the people of a district are not to be disfranchised because the ballots are lost or stolen, if they may still be supplied by the county clerk in time to hold the election."

In Wallbrecht v. Ingram, *supra,* the court, however, clearly pointed out the distinction between a case where the shortage of ballots was due to the inadequacy of the law, and a case where the shortage was due to the act of an individual, either through inadvertence or fraud; and, in the latter class of cases, it was suggested that the clerk might act so as to permit the election to properly proceed.

Upon that point the court said:

"It is, however, at once apparent that the condition before the court in that case was so very different from the one here presented that what was said in that case can have no application here. In that case, through no fault or inadequacy of the law, the voters in certain precincts were about to be disfranchised by fraud, to prevent which the court said that the clerk might furnish other ballots in place of those that had been lost or stolen. Manifestly this ruling was correct, for if it should happen, through some accident or misfortune or fraud, that the ballots were lost or destroyed on or before the day

of the election, the clerk should have the right to supply them, if he could do so in time to hold the election. But, in the case we have, the clerk performed his statutory duty and all the ballots furnished by him were used. There was no fraud practiced by any person connected with the election, nor was the insufficiency of the number of ballots due to accident or misfortune of any kind. The disfranchisement of the voters simply resulted from the failure of the statute to make adequate provision for furnishing a sufficient number of ballots." 164 Ky., 473.

Under this view of the statute, and the clerk's powers thereunder, we are of opinion that the error in the ballot having arisen from a mistake or neglect of the printer, or the clerk, and not from any deficiency in the law, the clerk properly corrected the error in order that the question submitted by the county court should properly be stated upon the ballot. Otherwise, the election would have been a nullity, and the county put to a large and unnecessary expense.

Judgment affirmed.