JUDGE COFER
delivered the opinion or the court.
The appellant left the home of her husband, the appellee, in Jefferson County, and went to the house of her father in Bullitt County, September 28, 1875, and has remained there ever since. October 1st of the same year she brought this suit in the Louisville Chancery Court for a divorce a vinculo matrimonii.
*487 The appellee appeared and answered, proof was taken, and without any formal objection, by demurrer, answer, or otherwise, to the jurisdiction of the court, the chancellor, doubting his jurisdiction, followed a precedent of one of his predecessors, and-dismissed the petition for want of jurisdiction, and this appeal is prosecuted to reverse that judgment.
The Louisville Chancery Court has general chancery jurisdiction, and has therefore general jurisdiction of the subject-matter of the suit; and the failure of the appellee to make formal objection to the jurisdiction of that court of this particular case was a w'aiver of any objection that may have existed to the jurisdiction of the court of his person, and was tantamount to an express consent on his part that the case might be tried in that court; and it had jurisdiction, unless, under section 4, article 3, chapter 52, of the General Statutes, the Bullitt Circuit Court had exclusive jurisdiction on account of the appellant’s abode there when the suit was commenced.
The statute reads as follows: “Action for a divorce must be brought in the county where the wife usually resides, if she has an actual residence in this state; if not, in the county of the husband’s residence.”
It is contended that the appellant, on account of her stay at her father’s house in Bullitt County, had acquired a residence there, and that in that event the statute is peremptory and the suit could not be lawfully brought elsewhere.
It is well settled that- the domicile of the husband is the only legal domicile of the wife, and that she can not change her domicile without his consent; but she may leave him and change her residence. (Maguire v. Maguire, 7 Dana, 181.)
The statute was evidently not enacted in order to make the jurisdiction local to the county where the parties resided at the time the cause for a divorce arose, nor with any view to the convenience of obtaining evidence, nor with the design to have the trial in the vicinage where the parties would be best knowm *488 or where all the facts would be most likely to be developed. If these were the purposes for which the statute was made, it would be in the power of parties, by removing, to defeat those purposes and to remove the jurisdiction to the remotest county of the state. The real object, we have no doubt, was to so regulate the jurisdiction as to subserve the convenience and possibly the interest of the wife by making the jurisdiction local to that county in which she should, at the time of the commencement of the suit, have an actual residence; and if she had no such residence in the state, then to the county of the husband’s residence.
If the jurisdiction had been confined to the county of the residence of the parties, or of one of them, at the time the cause for divorce arose, we might suppose the legislature had made the jurisdiction local to subserve public policy by requiring such suits to be brought where the parties would generally be known, and where the restraining influence of a wholesome public sentiment might tend to render such legal controversies less frequent, and where, if a suit was not prevented, the facts might be more fully or more conveniently proved, and the character and standing of the parties being known, might contribute something toward a correct decision.
In most, if not in all, of our local actions there is an obvious reason for making them local. The records of suits respecting the title to land may become muniments of title, and hence the law requires such actions to be brought in the county where the land, or some part of it, is situated.
Actions to settle and partition the estate of a deceased person or to probate or contest his will are required to be brought in the county in which he was domiciled at his death. Such county is generally the place of the residence of those interested in the estate, the estate is there, and those most familiar with it and with the affairs of the decedent are there, and those interested as creditors, distributees, heirs, and devisees, *489 if not there, would naturally go there to look after their interests.
So we might go on through the entire list of actions and suits made local, and we should not only have no difficulty in finding ample reason for making them local, but we should also find ample reasons for supposing that the legislature intended that such local jurisdiction should be exclusive, and beyond the power of one or even of both the parties to control it.
But as a suit for a divorce is not in its nature local, except to the tribunals of the country of which the parties are citizens or subjects, and we are unable to discover any reason which can have induced the legislature to make the jurisdiction local, beyond the control of the parties; and the jurisdiction having been made to depend upon the residence of one or the other of the parties at the time of commencing the suit, and thus practically subjected to their control, we think we do no violence to the language of the statute or the intention of the legislature in holding that the legislature only intended to fix the jurisdiction when it was disputed, and when the defendant was proceeded against by constructive service; and that in all cases in which the defendant is actually summoned or appears, and fails to object to the jurisdiction by demurrer or answer, the objection to the jurisdiction of the particular court is waived if that court is one having jurisdiction to grant a divorce in any ease.
We are not unwilling to admit that this construction does not seem to us to be entirely free from doubt; but it is, as now presented, no more than a question of practice, while a contrary construction might be fraught with consequences of the gravest character.
A contrary construction would leave every judgment granting a divorce open to collateral attack wherever and whenever it might be called in question.
*490 If the jurisdiction in such cases is to depend upon the residence of either party on the day the suit is brought, then without the. required residence the judgment is void, and would be liable to be questioned in every case in which it might be offered in evidence, and its validity would depend upon the evidence as to the residence of the husband or wife on a particular day. The residence, especially of the wife, might be difficult to prove; the proof might be conflicting; and it might happen that in one case in which the validity of a judgment was called in question it would be sustained, and in another would be held invalid, thus subjecting those interested to the most perplexing and embarrassing anxiety and uncertainty.
Suppose a suit by an alleged widow against the heirs of her husband for dower, and another suit against his personal representative for her distributive share of his surplus personal estate, and an answer in each case that the decedent had been divorced from the plaintiff, and a reply that the supposed divorce was void, because the suit therefor was commenced in the Franklin Circuit Court, which court had no jurisdiction, because, at the time it was commenced, the plaintiff (the then wife of the decedent) at that time had an actual residence in the county of Fayette. The replies must be held good, and the issue to be tried would be whether the supposed widow had an actual residence in Fayette County on the day the suit was commenced; and as there are two suits, the evidence in one may differ from that in the other, and thus different results may be produced; or, the evidence being the same, the causes may be tried by different judges, who may reach opposite conclusions.
These, with other and not less embarrassing complications, may arise under the construction contended for, while none that we are enabled to perceive can arise from the construction we have given.
*491 It seems to us therefore that even a doubtful construction ■which gives security by rendering the judgments of courts conclusive is to' be preferred to one which, though it may appear more in accord with the letter of the statute, would leave judgments of such importance perpetually open for collateral attacks.
Wherefore the judgment is reversed, and the cause is re-, manded for judgment on the merits.