## Justice v. Meade.

### (Decided January 28, 1915.)

### Appeal from Pike Circuit Court.

1. Elections—Schools—Qualification of Women Voters—Ability to Read and Write.—In order to comply with the statute allowing women to vote in school elections, and providing that they shall be able to read and write, it is sufficient if the voter can read in a reasonably intelligible manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced; on the other hand, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way words in common use and of average difficulty, though each and every word may not be accurately spelled.

2. Elections—Contest—Evidence—Tie.—In a contest over an election for school trustee, evidence examined, and held that each party received the same number of votes.

REYNOLDS & STEELE for appellant.

CHILDERS & CHILDERS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

At a regular school election held in Pike county in the year 1914 R. L. Justice and E. J. Meade were rival candidates for the office of school trustee of sub-district No. 37. On the face of the returns Meade received 28

votes and Justice 33 votes, and the certificate of election was awarded to the latter.

By an act approved March 12, 1912, the right of suffrage in school elections was conferred on all women who possess the legal qualifications of male voters, and in addition thereto are able to read and write. Chapter 47, Acts 1912, page 193.

Meade contested the election on the ground that eleven women voters who had cast their votes for Justice could neither read nor write. Justice filed an answer and counter-claim, denying the allegations of the petition, and pleading that Sam Sawyer and his wife, Fannie Sawyer, who had voted for Meade, had not resided in the district for the required time, and that Nora James and Virgie Justice, who were women, and had voted for Meade, could neither read nor write. The trial court deducted eight votes from the total received by Justice and two votes from the total received by Meade, thus leaving Justice's vote 25 and Meade's vote 26, and adjudged Meade elected to the office. Justice appeals.

Justice insists that the court erred in refusing to adjudge that Sam Sawyer and Fannie Sawyer, who voted for Meade, were illegal voters, and in adjudging that Rebecca Justice, Belle Adams and Caroline Honaker, who voted for appellant, were not qualified voters.

The point is made that the votes of Sam Sawyer and Fannie Sawyer should have been stricken from Meade's total because the allegations of the petition respecting their disqualification were not controverted. At the time appellant's brief was prepared the record before us did not contain appellee's reply controverting the allegations of the petition with respect to Sam Sawyer and his wife. However, on motion of appellee, a subpoena duces tecum was awarded requiring the clerk of the lower court to produce the reply. The reply is now in the record before us, and, as it denies the allegations of the petition respecting the two voters in question, and, as the evidence fails to show their disqualification, the trial court did not err in holding that they were qualified to vote.

With respect to the ability of Rebecca Justice and Belle Adams to read and write, considerable testimony was heard. Two or three witnesses testified that they could read and write, while others testified they could

not. However, it appears that the officer who was engaged in taking the depositions of the various witnesses made three efforts to obtain the deposition of Rebecca Justice and two efforts to obtain the deposition of Belle Adams, and that they refused, without sufficient excuse, to give their depositions. As there was considerable evidence tending to show that they could not read and write, and as the evidence to the contrary is by no means satisfactory, we conclude that the trial court was justified in holding that they could not read and write, because of their refusal to give their depositions, by which their educational qualifications could have been easily established.

Caroline Honaker is the only other voter left for consideration. She gave her deposition in the case, and, after testifying that she could read and write, read all of chapter five of the first book of Kings and eleven verses of Ezra. The only sample of her handwriting which she was required to exhibit was her signature appended to the deposition. It is, of course, impracticable to lay down any very accurate test for determining the voter's ability to read and write within the meaning of the statute. In a general way, we may say it is sufficient if the voter can read in a reasonably intelligent manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced. On the other hand, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way words in common use and of average difficulty, though each and every word may not be accurately spelled. When it comes to the signature of the party, the test should not be so severe as to require that every letter in her name should be accurately formed. Many good scribes have a habit of slurring their signatures, so that it is not always possible to make out the letters composing their names. Not infrequently do all of us receive correspondence signed by parties each particular letter of whose names we would be unable to decipher were it not for the letter-heads printed on the sheet on which they appear. Therefore, it is manifest that if the question of one's ability to write should be made to depend on the accuracy of each letter of his signature, many of our most intelligent and distinguished citizens, who would resent in the most emphatic manner the imputation that

they could not write, would, if required to possess the same qualifications as women, be utterly disqualified from voting. The matter which the voter in this instance was required to read was of more than ordinary difficulty, and was read by the voter in a reasonably intelligible manner. While each letter of her signature is not accurately formed, the signature as a whole is fairly legible, and we have found no difficulty in deciphering her name. We, therefore, conclude that she could read and write, and that her vote should have been counted in favor of appellant. It follows that appellant and appellee each received 25 votes, and the trial court should have so adjudged.

Judgment reversed with directions to enter such judgment as the statute may require in the case of a tie vote in the election of a school trustee.