## Price v. Judd.

(Decided May 2, 1916.)

### Appeal from Lee Circuit Court.

1. Husband and Wife—Separation—Residence of Wife.—Until there is a separation the domicile of the husband is the legal residence of the wife.
2. Elections—Qualification of Voters—Schools and School Districts—Women.—To be qualified to vote in a school election under section 4535h of the Kentucky Statutes a woman must be able to read in a reasonably intelligible manner sentences composed of words in common use and of average difficulty, and to be able to write in a fairly legible way words in common use and of average difficulty, but the pronunciation and spelling need not be accurate.

SUTTON & HURST for appellant.

H. S. McGUIRE, SCOTT & HAMILTON and J. K. ROBERTS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE.—Affirming.

At an election held in Subdistrict No. 4 of Educational Division No. 4 of Lee county, on August 7, 1915, to elect a school trustee, as the results were certified by the officers holding the election, appellant received twenty-seven votes and appellee twenty-six votes.

This suit was filed by appellee contesting said election upon the ground that six of the voters voting for

appellant lacked the proper qualification as voters in said election. The names of the voters whose rights to vote are challenged, and the reasons assigned therefor are as follows:

Dolly Price Mount because she was a non-resident of the district; Maud Price because she was not 21 years of age; Rosa Ann Goforth because she could not read and write; Nannie Evans, Mina Tincher and Frank Hughes because they were not residents of the district for sixty days next before the election.

The objections urged to the qualification of Maud Price, Nannie Evans, Mina Tincher and Frank Hughes are not in our judgment sustained by the evidence, and their votes were properly counted for appellant, but in view of our decision with reference to Dolly Price Mount and Rosa Ann Goforth, it is not necessary for us to recite the evidence and state our reasons for our conclusion that these four voters possessed the proper qualifications.

Dolly Price Mount is a married woman whose father lives in the district, but whose husband resides and voted at the last November election in the state of Ohio. Prior to her marriage Mrs. Mount had lived during a former marriage in Ohio, but after the death of her first husband, she had spent part of her time in Ohio, and a part of it at her father's in this district and had moved her household effects to her father's home where they remained until after the election. Just a few days prior to the election she had left her husband in Ohio and gone to her father's home for the purpose of having her eyes treated, and for the purpose of considering the purchase of a home by herself and husband in this school district in Lee county, Kentucky, with the intention if the purchase should be consummated of residing with her husband in the district. The contemplated purchase of a home did not materialize, and the husband was still at the time of the election and the trial of this case living and employed in Ohio. He had never been a resident of the district.

Mrs. Mount testifies that she has always considered and claimed her father's home as her home, and that she never had before cast a vote anywhere; that she had been in the district only once before in the eighteen months since her last marriage and remained then only two and one-half weeks; that she did not claim her husband's home as her home until they had established a

permanent home, which they had not yet done; that she came back to Kentucky before the election for the purpose of staying here until she and her husband were ready to go to housekeeping.

It will be seen from the above testimony that Mrs. Mount's husband was at the time of this election a resident of and a legal voter in the State of Ohio; that she and her husband were living together as husband and wife. It is a well settled rule that the domicile of the husband is the only legal domicile of the wife until she leaves him with the intention of a permanent separation. Maguire v. Maguire, 7 Dana 181; McAfee, Trustee, &c. v. Ky. University, 7 Bush 135; Johnson v. Johnson, 12 Bush 487; Dunlop v. Dunlop, 3 K. L. R. 20; Gooding v. Gooding, 42 S. W. 1123. Hence it results that Mrs. Mount at the time of this election was not a resident of the district.

Rosa Ann Goforth when giving her deposition was asked to write the name of Hugh Riddell the circuit judge and file it as a specimen of her penmanship with her deposition. In answer to this request she said: "I can't spell, let alone write it, but this is the best I can do." She then atempted to write the name on a piece of paper which is before us. She said that was the best she could do, and if it is, there can be no doubt of her inability to write. She was then handed a paper upon which the following was written very legibly: "Beattyville, Kentucky, September 15, 1915, Judge Hugh Riddell, City," and upon being asked to read this she said: "I can't read that." She was then handed an envelope upon which had been written with a typewriter the following: "Mr. Sam Hurst, Editor, Beattyville Enterprise, Beattyville, Kentucky," and in response to a request to read that she said: "I can make out some of it, Sam Hurst, I can make out Sam Hurst and Beattyville, and that is all I can make out." She was then asked to spell her name and spelled it correctly. She was asked if she did not in some transactions several years ago read and write, to which she answered: "No, sir, I never done no better than I did now." Asked if she had not written notes to a man by the name of Enoch Smith, she replied: "No, sir."

This is all of the evidence upon the ability of this witness to read and write. Section 4535h of the Kentucky Statutes permits women who can read and write and possess the other qualification of electors to vote in school

elections. And in Justice v. Meade, 162 Ky. 423, this court, construing said section of the statutes, said:

"It is, of course, impracticable to lay down any very accurate test for determining the voter's ability to read and write within the meaning of the statute. In a general way, we may say it is sufficient if the voter can read in a reasonably intelligent manner sentences composed of words in common use, and of average difficulty, though each and every word may not always be accurately pronounced. On the other hand, one is able to write who, by the use of alphabetical signs, can express in a fairly legible way words in common use and of average difficulty, though each and every word may not be accurately spelled."

Certainly Rosa Ann Goforth did not meet the test as thus construed, and we conclude she was not qualified to vote.

Having decided that Mrs. Mount and Mrs. Goforth were not entitled to vote and they voted and were counted for appellant to make his vote total twenty-seven, it results he received but twenty-five legal votes to twenty-six received for appellee, and that the latter was elected.

Wherefore the judgment is affirmed.