## Branham v. Branham.

Feb. 10, 1939.

768.

W. W. BARRETT and P. K. DAMRON for appellant.

E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

In an election held on July 9, 1938, in district No. 138, Pike County, to elect a sub-district school trustee, appellee was awarded certificate showing that he had received thirty-six votes; appellant had received thirty-five. In a timely proceeding appellant charged that some thirteen votes were illegally counted for appellee, because cast by voters residing in a different district. The alleged interlopers were named, and among them was Sis Mitchell. Appellant asked that the alleged illegal votes be deducted from appellee's accredited vote.

Appellee filed answer and counter contest, first denying the allegations of appellant's pleading, and among other grounds of counter contest not necessary to mention, charged illegal voting by several non-residents of sub-district No. 138. Among those named was Elizabeth Baker. In his prayer he asked that five votes be deducted from the total of appellant's accredited votes, and that his petition be dismissed. A reply in denial of the answer completed the issues.

We have confined our statement of the pleadings mainly to the issues determined by the court. In appellant's brief it is contended that the court erred in striking the vote of Elizabeth Baker from his total, and that the court properly struck the vote of Sis Mitchell from the total received by appellee. All other questions presented by the pleadings appear to have been passed into the discard.

After taking considerable proof covering other matters, and the main one discussed, the cause was submitted. The court passing on the questions presented as to the two votes above mentioned, found that Sis Mitchell, who had voted for appellee, while sojourning in district No. 138 at the time of the election, had not re-

sided therein a sufficient length of time to entitle her to vote, and deducted her vote from appellee's total, leaving him thirty-five votes.

On appellee's counter contest, the court found that Elizabeth Baker was a non-resident of the sub-district at the time of election, and not entitled to vote. She had voted for appellant and the court deducted her vote, leaving him with thirty-four. This did not change the result as far as a majority (or plurality) is concerned. The court in judgment recited that there was "no contention as to any of the other votes alleged in the petition or counter claim." As a result of this finding contestant's petition was dismissed, and appellee was declared to have been duly elected. Contestant appeals.

Appellant's contention if correct, would leave appellant with his original thirty-five, and appellee with thirty-five, thus resulting in a dead heat.

The testimony upon which the court struck Sis Mitchell's vote from appellee's count was embodied in her own evidence. She said she was twenty-five years old, and lived at Robinson Creek in Pike County; that she was at home in July, 1938, and cast her vote for appellee. She was a married woman, and said that her husband lived in Cleveland, Ohio, where he had resided all his life. After marriage (time not shown), she lived in Cleveland with her husband about five weeks, returning to her mother's home "sometime around Feb. 1, 1938." She had never been divorced from her husband. Counsel for appellee was satisfied to ask only one question of the witness, which led her to say that she had always *claimed* her home with her mother. This was insufficient to establish her residence in the state or county for the required time for voting purposes, nor did that mere statement sufficiently show that she had established a residence in Kentucky. A reference to Kentucky Statutes, Section 1478; Erwin v. Benton, 120 Ky. 536, 87 S. W. 291, 27 Ky. Law Rep. 909, 9 Ann. Cas. 264; Price v. Judd, 169 Ky. 772, 185 S. W. 154, convinces us that this voter did not place herself in the same position as the challenged voter in Whitaker v. Stephens, 242 Ky. 164, 45 S. W. (2d) 1045. It takes more than a mere claim to establish residence.

Appellee in brief makes other technical contentions. First, that the petition charged an illegal vote by Sis Mitchell, whereas the witness and voter testifying was

either Clara Cheek or Clara Mitchell. While on the stand she said her husband's name was Cheek, and though not divorced she used the name Clara Mitchell. There was sufficient proof by persons who had known her in girlhood to identify her as Sis Mitchell, and as the same person who had voted in the election.

It is also contended that there was variance in the allegation of the petition and the proof, or perhaps the reason given by the court for striking her name. The petition alleged that she lived in district No. 11, and therefore a non-resident of No. 138, and that the matter of the length of time of her residence in Kentucky was not pleaded.

Section 145 of the Constitution fixes the residence qualifications of a voter. Section 4399-8, Kentucky Statutes, under which school trustee elections are held, provides that each *legal* voter of the sub-district shall be entitled to vote, provided each has resided in the school district sixty days previous to the election. As we read this section, it means that a person to be a legal voter in such elections must have resided in the state one year and in the county six months, prior to the election. The only difference in this provision and like provisions as relate to general (or primary) elections, is that a legal voter who has lived in the district sixty days prior to election may vote, though he may not have lived in a particular voting precinct for sixty days. One thing is clear, that the person offering to cast his vote must be a legal voter, and such he cannot be if he has not resided in the state and county for the period required by law.

But getting directly to the point, we find that the petition plead that: "Sis Mitchell, with others, were not legal voters in said sub-district, and could not legally cast a vote for the contestee; that each of said voters were residents of district No. 11." Without entering into argument as to whether there was variance between such allegation and the proof, it is noted that the pleader, in another paragraph specifically alleged that they were each non-residents of district No. 138, and therefore not entitled to vote.

While the court expressed the conclusion that the challenged voter had not lived in the district a sufficient length of time, it was to all intents and purposes the same as if he had said she was a non-resident, hence not entitled to a vote. The court reached the correct conclu-

sion, that is, that she had cast an illegal vote, and it makes little difference as to his reasons in thus deciding. The real issue presented was whether Sis Mitchell had a legal right to cast her vote.

We take up now the contention of appellant that Elizabeth Baker's vote was erroneously stricken from contestant's total, and counter argument of appellee that the court properly struck her vote, and as in the Mitchell case the determination turns on her testimony. She was a sister of appellant, by profession a beautician, and her proof shows that in following her calling she was somewhat peripatetic. She stated that she lived at Douglas, in precinct No. 138. She did not vote in the last school election; she was there, "but no one was running against John." She voted in the precinct in the last general election. She testified that she had some household goods at Douglas, and had gardened there "this year," and was a registered voter in district No. 138. It was shown that she owned some real property in the district. Asked the direct question: "When did you move to district No. 138, where you now live?" She answered: "Well, I have always had my furniture there, but I have been working at Freeburn almost two years, and I worked at Jenkins some time, also in Virginia, but I came home twice each week, and I lived at the mouth of Shelby one month."

She was a married woman, and said she bought the property she had "been speaking about" since she married Roy Baker. While she was at Freeburn she and her husband did light housekeeping. She went from Jenkins to Akron, Ohio, and stayed a short while, not engaging in business. She repeated that she had some of her furniture at her mother's and some in a "house back of my mother's." She kept house at Elkhorn, but that was before she went to Jenkins.

She admitted tacitly that she, and indirectly, her husband, had voted at Freeburn in the primary "August a year ago." Also that she came back to Douglas from Freeburn on July 9, 1938, which was the day of the election, but "I have always kept my furniture there." It is not attempted to be shown where her husband usually voted, or where his residence was. The whole trend of her testimony leads to the belief that she claimed her residence in Douglas, because she kept her furniture there, and raised some potatoes and beans; it

it is apparent that witness coming into the school district on the day of the election, undertook in proof in a feeble way to establish a voting residence.

We are of the opinion that this voter was not qualified to vote in the school election. Analyzing witnesses' testimony closely, it may readily be determined that her residence was at Freeburn (some distance from District No. 138), at the time she offered herself as a voter. It was charged in counterclaim that Roy Baker, the husband, also voted in the election, but we do not find that he testified, nor is there testimony showing that he voted, nor any attempt made to show where he usually resided, or voted, except in witness saying, "He generally votes where I do."

The case of Matney v. Elswick, 242 Ky. 183, 184, 45 S. W. (2d) 1046, involving a sub-district trustee election in Pike County, shows facts existing, with relation to residence qualifications, very similar to the facts here. In that case, following Penny v. McRoberts, 163 Ky. 313, 173 S. W. 786, we held that a citizen cannot select for himself a voting place other than the place the law constitutes his legal home and habitation. If he actually lives in one district, he cannot vote in another, unless he resides in the former merely for temporary purposes, and evidences a clear intention of returning to what is claimed to be his permanent home. The fact that one leaves household goods at a certain place is not controlling evidence that one actually resides in that place. It would not be persuasive, where the evidence shows, as here, that the husband and wife kept house in another district for two years; that her business was conducted there, and that both she and the husband voted in a primary election in August, 1937.

The fact that she had thus voted at that time would not have precluded her from voting in No. 138 on July 9, 1938, provided she had established her residence there in the required time, rather than attempting to do so on the day of the election. Without further discussion we express the opinion that this vote was properly stricken from appellant's total.

On the whole case we think the evidence was such as to justify the court's action in rejecting both the alleged illegal votes and in concluding that appellee had been duly elected.

Judgment affirmed.