## Thomas v. Newell, Circuit Judge.

Feb. 17, 1939.

**As Modified on Denial of Rehearing April 21, 1939.**

HAGAN & HAGAN, JOHN H. DOUGHERTY and BROWNING, ZEIGLER & COCHRAN for petitioner.

B. S. GRANNIS, O. R. BRIGHT, RUSSELL PORTER and ROBERT P. HOBSON for respondent.

OPINION BY CHIEF JUSTICE THOMAS—Making temporary writ permanent.

By this original action filed in this court petitioner, Jessie May Thomas, seeks to prohibit respondent, Hon. Charles D. Newell, Judge of the Mason circuit court, from further proceeding to try and determine the case pending before him in that court, styled "Stanley Thomas v. Jessie May Thomas," upon the ground that

respondent's court has no jurisdiction of that action because when it was filed (it being a divorce action filed by plaintiff therein against petitioner herein) the petitioner was a resident of Jefferson county, Kentucky, and under Section 76 of the Civil Code of Practice a divorce action "must be brought in the county where the wife usually resides, if she have an actual residence in this State; if not, in the county of the husband's residence." It will thus be seen that the section localizes such an action and requires it to be brought in the county of the wife's residence, if she has one in this state; otherwise it may be brought in the county of the husband's residence if he resides in the state.

Petitioner filed a special demurrer in the Mason county action, and also a plea in abatement thereof, in the latter of which she stated that at the time the husband's divorce action was filed in the Mason circuit court she was a resident of Jefferson county, Kentucky, and before he filed it against her she had prepared her petition against him for a divorce to be filed in the Jefferson circuit court, which filing was done the next day after the filing of her husband's petition in the Mason circuit court on the late afternoon of that day, but which fact she did not know at the time her petition was filed in the Jefferson circuit court, nor was she ·made aware of the filing of her husband's petition for something like a month thereafter. A hearing was had before respondent upon the preliminary issue of venue jurisdiction, at which testimony was heard, which was transcribed and has been made a part of this record. At its close respondent announced his conclusion that the Mason circuit court possessed jurisdiction of the case of Stanley Thomas v. petitioner pending in that court; but before an order was made and signed to that effect this original action in this court was filed by petitioner to prohibit respondent from further proceeding in the case or making any orders therein, except one abating it for want of jurisdiction in the Mason circuit court.

The pleadings and the proof develop substantially these facts: That the parties were married in 1931 and lived the greater part of their married life up to 1936 in the city of Louisville, Kentucky—part of the time in a residence owned by the husband, and part of the time in one owned by the mother of his wife, the petitioner. At that time the husband was an agent for the Kentucky

Central Life Insurance Company, a domestic corporation, with headquarters and home office in the city of Louisville. In the year referred to he was made superintendent of agents in a prescribed district composed of some counties in the state of Ohio across the river from Maysville, Kentucky, and a number of counties in central Kentucky with headquarters at Maysville, to which place the parties moved and rented an apartment where they kept house. The chief duties of the husband in the latter position consisted of superintending of agents under his jurisdiction, and were largely inspection duties, causing him to visit the various agents under his authority and which kept him away from home a large part of the time. Before the last separation hereinafter referred to there had been three prior ones, following some of which, if not all, the wife filed divorce actions against her husband which, we gather from the record, were based upon the ground of cruelty and infidelity; but on each occasion he promised to reform and repent and the disturbances were dropped by mutual consent.

Some days before August 29, 1938, while the husband was away from home in the discharge of the duties of his position with the insurance company, the wife (petitioner) found a batch of letters somewhere in the residence addressed to her husband and written by one Mrs. Lillie Mae Bean, who resided in Dayton, Ohio, and who appears to have been either the agent or in some way connected with the local agency of the Kentucky Central Life Insurance Company at that place and which was within the jurisdiction of the husband. It is intimated that those letters, though not copied in the record, were very endearing and affectionate, and as interpreted by petitioner (wife) they portrayed a relationship between the writer and addressee not altogether conforming with upright conduct or the degree of moral fidelity due from a husband to his wife. The discovery appears to—and no doubt did—very much disturb her and she sent a telegram to Mrs. Bean, signing her husband's name thereto, requesting her to come to his residence in Maysville at once; but she did not inform her husband of what she had done. On that night, at about 11 o'clock, Mrs. Bean appeared at the residence but to the great astonishment of the husband, and soon thereafter the storm began to rage, which lasted the major part of the night, with only the three

of them present so far as the record discloses, up to 3 o'clock, when the husband took Mrs. Bean and carried her to the depot where she took a train back home. It would serve no useful purpose to undertake to detail what occurred at that time, except the wife stated—and she was not contradicted—that she did not go to bed, nor did she sleep any at all.

Between 7 and 8 o'clock the next morning petitioner consulted one Russell Porter, the only attorney she knew in Maysville, and laid before him the facts with a view of getting his advice as to the course she should pursue in bringing about a permanent separation and finally a divorce from her husband, which she had determined upon because of language he had used towards her, plus her interpretation of the letters she found, each of which causes she concluded furnished ample grounds, not only for separation, but for a divorce. Upon application of the wife to the attorney she made known to him not only that she was going to immediately separate from her husband, but that she was going to return to Louisville and take up her abode with her mother where she had lived prior to her moving to Maysville, and which she had always claimed as her home, although the proof shows she had registered once and perhaps voted once in the city of Maysville after moving there.

The husband, on the morning of August the 30th, left the home on one of his tours of inspection, but, according to his testimony, he stated to his wife that he would return that night, and obtained a promise from her that she would not leave before his return, although she had told him beforehand that she was going to leave him. Soon after the husband left the wife began to pack her belongings and by 4 o'clock in the afternoon she had them at the depot for shipment, and herself took the train for Louisville, where she arrived later on that evening and went to the home of her mother. The next day (August 31st) she went to the office of Hagan & Hagan, attorneys in the city of Louisville, and had them prepare her petition for divorce which she verified at the time and left it with her attorneys to be filed in court; but they did not do so until the next day (September 1st). However, at about 3 o'clock P. M. on August 31st—and which was after the wife's attorneys in Louisville had prepared her petition to be filed in the Jefferson circuit court against her husband, and

which she had verified—the husband filed his divorce action against petitioner in the Mason circuit court seeking a divorce from her, and which is the action hereinbefore referred to.

The facts as so briefly outlined—and which are substantially admitted, or not denied—are sufficient to present the legal question with reference to the challenged jurisdiction of the Mason circuit court, and which hinges entirely upon the further question as to where was the residence of petitioner (the wife) at the time the husband filed his action in the Mason circuit court in the late afternoon of August 31, 1938? If she had in good faith acquired a residence in the county of Jefferson at that time (no matter how recent) then the Mason circuit court was without the proper venue jurisdiction to try the Mason county case filed by the husband, and should have abated it on application therefor. But on the other hand, if petitioner at the time of the filing of the husband's action in the Mason circuit court had not in good faith acquired a residence in Jefferson county, then her residence would be presumed to be that of her husband in Mason county and his action filed in that county would prevail over the one later filed in Jefferson county by petitioner against him.

In the case of Gooding v. Gooding, 42 S. W. 1123, 19 Ky. Law Rep. 967, the facts were—that the husband and wife lived together in Mason county for more than eleven years. On the 28th of September, 1895, the wife left the home of her husband in that county and took up her abode in Kenton county. Two days after arriving in Kenton county, and after separating from her husband, she swore to her divorce petition to be filed in that county against her husband, which was filed on the next day, October first. The husband contested the jurisdiction of the Kenton circuit court to entertain the divorce action filed by his wife therein, but this court on the authority of Johnson v. Johnson, 12 Bush 485, 487 (as did also the circuit court) sustained the jurisdiction of the Kenton circuit court upon the ground that the wife in separating from her husband and in changing the location of her residence to Kenton county made her an actual resident of that county within the meaning of our Code section 76 supra, and in dong so this court said: "To obtain a residence in this state, no length of time is required by law; the intention of the party, and fact of location at any point, make the resi-

dence. It is evident from the proof that the appellee had abandoned the home of her husband, in Mason county, and had taken up her residence in Kenton county. The fact that she still remains in Kenton county is some evidence that her residence in said county is in good faith." The principle therein laid down, as applicable to the specific question involved (i. e., change of residence of a separated wife so as to confer jurisdiction of the court of her newly acquired residence) was also similarly determined by us in the cases of McClintock v. McClintock, 147 Ky. 409, 144 S. W. 68, 69, 39 L. R. A., N. S., 1127; Smith v. Davis, 170 Ky. 379, 186 S. W. 176, and Faulkner v. Faulkner, 246 Ky. 238, 54 S. W. (2d) 905. See also annotation in 39 A. L. R. pages 728, et seq., and the text in 19 C. J. 35, section 55; and in the same volume on pages 26 and 31 (sections 36 and 44) it is pointed out that the words "domicile" and "residence" are synonymous as employed in the law fixing venue of divorce actions.

By reading our cited domestic cases supra it will be seen that the language we employed in those opinions does not expressly require that the new residence of the wife should be acquired "in good faith," although that requisite appears to be most generally adopted by the courts. However, if we should accept it as being necessary within this jurisdiction—and treating our former opinions as having overlooked the statement of that necessary element—then we are convinced that the separation of petitioner from her husband in the circumstances and upon the facts which we have so briefly outlined substantiates good faith on her part and demonstrates that her determination to leave him for the reasons stated (and to also remove her personal belongings, both of which she did before her husband filed his action in the Mason circuit court) establishes the requisite animus manendi by which her residence was changed from Mason county to Jefferson county. Under the Gooding and other opinions cited supra "no length of time is required by law" to effect such a change of residence. We think it was completed by the wife in this case before the husband filed his action against her in the Mason circuit court, and which had the effect to confer the exclusive venue of a divorce action between the parties in the Jefferson circuit court and to deprive the Mason circuit court of jurisdiction thereof.

In the case of Smith v. Davis supra, we took origi-

nal jurisdiction of a similar procedure to this one, wherein the circuit court was sought to be prohibited from taking further action in a divorce action pending therein on the ground that it had been brought in the wrong venue. We therein at least impliedly upheld our jurisdiction to entertain such an original action. But, without that implied authority, it is clear that the matters involved are such as to confer original jurisdiction upon this court in the circumstances and under the facts of this case. We, therefore, cannot agree with argument of learned counsel for the husband—briefing the case for respondent as amicus curiae—to the effect that petitioner has an adequate remedy by appeal to this court, whereby the error of respondent in assuming jurisdiction might be corrected, although they concede that if a divorce should be granted to the husband no appeal would lie therefrom. It is argued, however, that a divorce is the relief sought by the wife by her action in the Jefferson circuit court, and that, although she might not be able to reverse a judgment of divorce in favor of the husband granted by the Mason circuit court, yet such relief is the same as that sought by her in the court she selected. The argument loses sight of the fact that many other elements enter into the case, such as expense attendant upon the litigation from the newly acquired residence of the wife, and the probable effect on the question of alimony that a sustaining of the husband's allegations against her might produce, and other facts not necessary to mention. We conclude, therefore, that at the time the husband filed his action in the Mason circuit court petitioner had acquired in the proper manner a residence in Jefferson county, and that any action for a divorce between the parties should be brought only in the Jefferson circuit court.

Wherefore, the temporary writ of prohibition granted herein upon the filing of the petition is made permanent, and respondent is prohibited from proceeding further in the case of Stanley Thomas v. Jessie M. Thomas pending in the Mason circiut court, an action filed therein on August 31, 1938, other than to abate the action by dismissing it without prejudice; the whole Court sitting.