## Hieatt Brothers, Incorporated v. Morgan.

(Decided June 5, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Brokers—Purchaser Cannot Recover Sum Paid Broker in Excess of Amount Received by Owner, in Absence of Relationship of Principal and Agent.—In absence of relationship of principal and agent between purchaser of property and real estate broker, former cannot recover from latter difference between amount paid, in reliance on fraudulent representations that property could not be bought for less, and amount received by owner.

2. Brokers—Contract of Employment to Purchase Property Held Not Established.—In action for amount paid real estate broker in excess of amount received by owner of property, purchased by plaintiff in reliance on broker's false representations that property could not be bought for less, evidence held insufficient to establish contract of employment between plaintiff and defendant.

DAVID R. CASTLEMAN for appellant.

BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

In a general way this action grows out of the same transactions this day considered in Hieatt Bros., incorporated v. Kirwan.

Appellee brought his equitable action against Hieatt Bros., incorporated alleging in substance that in August, 1922, he employed appellant, a corporation engaged in the real estate business, to buy for him a home in Louisville, and while it was so engaged and employed by him as his agent, it falsely and fraudulently represented to him that a certain home which it bought for him as his agent could not be bought for less than $8,500.00, and relying upon same he paid that amount therefor, whereas in truth at the time defendant knew the property could be bought for $6,500.00, whereby it as his agent defrauded him of $2,000.00, for which he prayed judgment.

These averments were put in issue, including the allegation of agency.

After full preparation the chancellor entered a judgment for plaintiff for the $2,000.00 less a commission, from which action this appeal results.

The action is bottomed upon the existence of the relationship of principal and agent, and the duties of appellant growing out of that relation; and it is essential at the outset to determine from the evidence whether plaintiff has established its existence, for if he has not his action necessarily fails under the rule laid down in Ripy v. Cronan, 131 Ky. 631.

The allegation in an amendment after the evidence was all taken is, that on August 5th, 1922, plaintiff employed the defendant to buy for him a home in Louisville, and that defendant accepted said employment, and on that date introduced him to one Harmon, its agent, and told him that Harmon would show to him the house he specifically had in mind, and other houses so as he might find a house that would suit him.

The plaintiff himself is the only witness relied upon to establish this allegation, and in undertaking to do so he relates conversations had between him and. G. Y. Hieatt, vice president of appellant, on the 5th of August, 1922, and conversations had between him and C. M. Harmon, agent of appellant, on the 5th and 9th of August, 1922.

He states that early in August he saw on a house at 15th and Jefferson streets an advertisement saying it was for sale by Hieatt Bros., and on the 5th of August he went to its place of business where he met a man whom he was informed was G. Y. Hieatt, and "I told him I wanted to buy a house," although he later appends to that statement that he told him "he wanted them to buy

a house for me;'' that Hieatt then told a young man to take him back to Mr. Harmon, and the young man did so, and told Harmon that ''I wanted to go look at a house,'' whereupon Harmon got up and went with him to the house which he had mentioned, and showed it to him; that after they had looked at the house he concluded he did not want it, and Harmon told him that Hieatt Bros. had other houses, but he declined to look at them on that day. He says that in the progress of that conversation he told Harmon he had a farm in Nelson county he was going to sell, and Harmon suggested to him that he let Hieatt Bros. sell it at auction, and in the progress of the conversation Harmon told him Hieatt Bros. ''would charge ten per cent for selling the land out in the country, and would charge me five per cent for buying in the city,'' but he does not state specifically that he and Harmon entered into any agreement as to the rendition of any service to him by Hieatt Bros. so as it might earn either commission.

That the conversation with Hieatt on the 5th of August did not create the relationship of principal and agent is plain, for Morgan does not claim that Hieatt himself entered into any contract with him, but only directed that he go to Mr. Harmon; and that the casual reference in the subsequent conversation between Morgan and Harmon to the commissions which Hieatt Bros. charged for selling country property and buying city property was not intended to be the completion of an agreement by which that corporation should act for him in buying a house seems to be conclusive from the fact that subsequently when he made up his mind to sell his farm in the country, he went to Hieatt Bros., place of business, and there entered into a specific written contract with it as to the selling of his farm, the compensation and all details. If he regarded the conversation between him and Harmon as to the commissions an agreement by which Hieatt Bros. were to buy him a home, why did he not likewise regard it as an agreement by which they were to sell for him his country property?

Morgan and Harmon only looked at the one house on the 5th of August, the one upon which Morgan had seen the sign of Hieatt Bros., and when they separated there was no distinct agreement as to the looking at other houses. Later in his evidence Morgan states that on the 9th of August he went again to Hieatt Bros.' and that on

that day Harmon again went with him and showed him two or more other houses listed with them for sale, and finally took him to the Kirwan house on Jacob street. That house had previously been listed for sale with Hieatt Bros. but had been withdrawn and Harmon took him to see and look at it, nevertheless, which they did with the permission of Kirwan's wife. While they were looking at that house Harmon told him that Kirwan wanted $8,500.00 for it (and that was the price at which it had been listed with Hieatt Bros.) whereupon Morgan said he thought it was too much, and no conclusion was reached, Morgan telling Harmon he would have to study about it a week or two, and could then make him no answer.

That night Harmon knowing the Kirwan house was not then listed with Hieatt Bros., went to Kirwan's house and tried to get him to place a price upon it, or to again list it with Hieatt Bros. This Kirwan expressly declined to do, and positively refused to fix any price, but said he would consider a written proposition, and either reject or accept it.

Between the 9th of August and the 12th of August, so far as the record discloses, there was no communication between Morgan and Harmon, or between Morgan and anybody connected with Hieatt Bros.; and on that date Harmon in his own name submitted a written proposition to Kirwan to give him $6,500.00 for his Jacob street property, and that proposition was accepted in writing by Kirwan and wife with the provision that they should pay no commissions.

On the 15th of August Morgan again went to the place of business of Hieatt Bros. and there on that day entered into a written contract with it by which it was employed to sell at public auction his farm in Nelson county, and although he now claims that through his conversations with G. Y. Hieatt and Harmon there was a contract that Hieatt Bros. should act as his agent in the purchase of a home in Louisville, he admits that on the 15th of August when he was making the other written contract there was not only no reference of any kind in the written contract about the farm land to any other contract between him and Hieatt Bros., but nothing was said about or any reference made to the existing contract about the purchase of a home. Not only so, that written contract fixed a different commission from that he says Harmon fixed. Again a few days later when there was

a sale of his farm in Nelson county he had an extended conversation with C. C. Hieatt, president of appellant, and made no reference of any kind to the existence of a contract by which that corporation sustained to him the relation of agent to buy him a home. Again when he went to Hieatt Bros. to settle up the sale which it had conducted of his farm land no reference to the other. alleged existing relationship was made.

On the 21st day of August, nine days after Harmon had entered into the written contract with Kirwan, Harmon again took Morgan to look at the Kirwan home, and upon that occasion, for the first time, Morgan's wife accompanied him. Then it was, after the wife had seen the property that they entered into a written contract with Harmon individually by which they were to pay him, individually, $8,500.00 for the property, and on that day Morgan gave Harmon in his own name a check for $500.00 which recites on its face:

"First payment on property, 326 Jacob St."

Thereafter Kirwan, Morgan and Harmon met and the trade was consummated, Kirwan getting his $6,500.00 and Harmon obligations for the balance. And when it was all closed it is admitted by Morgan that Harmon never received from or demanded from him any commission, and that he never offered to pay him any, and never had.

All the evidence shows that none of the officials of Hieatt Bros. knew of these transactions between Harmon and Kirwan and Harmon and Morgan until long after they were consummated, and these suits were projected.

Both G. Y. Hieatt and Harmon explicitly deny that they, or either of them, ever were employed or entered into any contract of employment with Morgan, other than the written contract about the Nelson county land.

The opinion of the chancellor below seems to be based wholly upon his acceptance of Morgan's statements as opposed to those of Harmon, although in his opinion it is admitted that Morgan in many things in his evidence misstated facts and made exaggerated statements, but because of the unenviable attitude of Harmon toward all the parties to the litigation he prefers to accept the version of Morgan. He, however, it appears to us, wholly fails to take into the estimate in any vital facts and circumstances surrounding the transaction which stand ad-

mitted. For instance it must be true that Morgan, when he saw the sign on the house at Fifteenth and Jefferson streets, knew that Hieatt Bros., represented the seller, and that it represented the seller as to every house which was listed with it for sale. He knew then when he went there that primarily their duty was to the other party, and that under ordinary conditions it would be inconsistent with their representing him in the purchase of such property. In the next place Morgan admits that he offered to pay no commission to Harmon or Hieatt Bros., and that they demanded none from him, a fact which is wholly inconsistent with the relationship he asserts. Again, that he did not consider the casual conversation between him and Harmon as to commissions a contract of employment is apparent from the fact that he thereafter, when he in good faith desired to enter into a contract with Hieatt Bros., went to their office and signed a specific written contract about the sale of his farm, which did not mention or have reference in any form to what he now claims to have then been an existing contract about the purchase of a house in Louisville.

The chancellor in his opinion seemed to have an idea that the check of Morgan to Harmon for $500.00 or some part of it might be deemed as a payment of commissions. The recital in the face of the check that it was the first payment on the Jacob street property is wholly inconsistent with this view, and especially when it is admitted by Harmon that he did not pay and did not offer to pay any commission to anybody, and that all he paid was the $8,500.00.

It convincingly appears from these admitted facts that Morgan's subsequent claim of a contract to buy him a house was an afterthought. Whatever may be the attitude of Harmon in these transactions, the admitted facts and all the attendant circumstances appear to corroborate his statements.

Our conclusion from this analysis of the evidence is that the plaintiff failed to establish the existence of a contract of employment, and therefore his petition should have been dismissed. No other question is decided.

The judgment is reversed with directions to dismiss the petition.