# Cornett-Lewis Coal Co. v. Eversole.

Nov. 30, 1945.

James Sampson, Charles I. Dawson and Woodward, Dawson, Hobson & Fulton for appellant.

Edward C. O'Rear, Allen Prewitt, and J. B. Carter for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

A contract was made on November 12, 1940, between Virgil Eversole and the Cornett-Lewis Coal Company, reciting that the company contemplated leasing from the U. S. Coal & Coke Company a certain boundary of coal land and agreeing that it would haul coal from it over or through certain property of Eversole which had been leased to the company in January, 1935, and pay him for the privilege a sum equivalent to the difference between the actual royalty to be paid the Coal & Coke Company and 15½ cents per ton. But the contract was not to become effective unless the proposed lease from the U. S. Coal & Coke Company should be executed within twelve months. Other provisions of the contract are not material here. Eversole has prosecuted this suit for a breach of that contract and an accounting, and also asked for a declaration of rights. This judgment being in his favor, the defendant appeals.

The plaintiff alleged in his petition that the true consideration of and for the agreement of the Cornett-Lewis Coal Company to pay him as stipulated in the contract was his agreement to procure the lease of the Coal & Coke Company's land for the defendant; that within six months he had procured the agreement of that company to lease the land upon terms acceptable to the defendant and he had submitted the form of lease, but the defendant had, in short, wilfully procrastinated the execution or consummation of the lease until after the expiration of twelve months from the date of his contract with it; that thereafter, namely, in January, 1942, it had leased the land from the Coal & Coke Company for a royalty of 14 cents upon substantially the same terms provided in the draft for a lease which he had obtained and submitted.

The plaintiff claimed in his suit that he was entitled to 1½ cents per ton for coal mined and removed from that property or hauled over or through his land.

The defendant admitted the execution of the contract and the lease, but denied all the other allegations of the petition and any obligation to the plaintiff. It affirmatively pleaded that sometime prior to September 24, 1940, Eversole had made certain representations to it with respect to procuring the lease and alleged its reliance on them. They included the understanding that the royalty to be paid the Coal & Coke Company plus Eversole's compensation would not together exceed 15 cents per ton. It pleaded that Eversole had in fact been able to obtain the lease according to the stipulation, conditions and terms agreed upon, but thereafter he had made other representations which were false. One of them was that the lease could not be procured for a royalty of less than 15 cents per ton, and it was then agreed to pay the plaintiff one-half cent per ton as full compensation for hauling the coal over and through the plaintiff's property, which was then under lease and being operated by the defendant. It pleaded that the plaintiff's representations were false and fraudulent and made with the intent to deceive the defendant, his principal, and that the contract of November 12, 1940, sued on, was made in reliance upon those false and fraudulent representations. The answer also recites that on March 11, 1941, by direct negotiation the Coal & Coke Company had proposed to lease the coal to the defendant for a royalty of 14 cents per ton, and that the defendant then for the first time learned of the false representations of the plaintiff, and that after it confronted him with the fact, all negotiations with respect to the lease were conducted without his assistance or intervention. Many of the provisions of the draft of the lease which had been previously tendered by the plaintiff were unacceptable, and because of the extended negotiations for the lease with the Coal & Coke Company, as well as time for the examination of the title, the lease was not ready for execution until after November 12, 1941, which was more than 12 months after the contract made with the plaintiff; thus there was no obligation to the plaintiff. It was further alleged that because of the refusal of the plaintiff to accept one-half cent per ton for the privilege of hauling coal over his land, the defendant had made other arrangements and none of the coal had been or is

being hauled over or through the plaintiff's property, so that he is not entitled to anything under his contract. A reply joined the issues. Much testimony was heard. The trial court found in effect that there had been no misrepresentation by the plaintiff that the Coal & Coke Company would not lease its land for less than 15 cents per ton net; that the plaintiff had never agreed to accept only one-half cent per ton compensation for the hauling privilege; that after the defendant had learned all the facts alleged to have been misrepresented it had elected to execute its contract with the plaintiff of November 12, 1940. The court further found that plaintiff's agreement to leave or permit the defendant operating company to leave sufficient coal for support of a haulway through the property longer than necessary to mine his tract was a sufficient consideration for the contract; also that plaintiff had submitted a lease with the Coal & Coke Company which the defendant had been willing to make, and that, although the defendant may not have been required in fact to use the haulway, so far as plaintiff's compensation was concerned the defendant was bound to pay it. It was further found that the defendant had unreasonably delayed and postponed the negotiation and execution of the final draft of the lease beyond 12 months from November 12, 1940, and cannot rely on that limitation in the contract. Judgment was rendered in favor of the plaintiff for a sum equal to 1½ cents per ton of coal mined and hauled by the defendant from the land leased from the U. S. Coal & Coke Company. The amount to June 30, 1944, was $2,531.04, for which sum with interest judgment was awarded, and the right of the plaintiff to collect future sums was declared.

Concerning the issue of misrepresentation. The evidence of the defendant was in substance that following its lease of 280 acres of coal from the plaintiff on January 17, 1935, Eversole endeavored to acquire the adjacent 500 acres owned by the U. S. Coal & Coke Company in order that he might also lease it to the defendant. Failing to do so, he began negotiations as an intermediary or as agent of the defendant to obtain a lease from the Coal & Coke Company to the defendant. There is conflict in the testimony as to whether Eversole disclosed to the Coal & Coke Company that he was representing the defendant or that he was acting for himself; also whether or not the officers or agents of the Coal & Coke Company

ever agreed to accept less than 15 cents per ton royalty. These negotiations culminated in a contract between the plaintiff and defendant of date September 24, 1940, which is exactly like that sued on, namely, that dated November 12, 1940, except that the haulage fee to be paid Eversole was the difference between the actual royalty to be paid and 15 cents instead of 15½ cents per ton, stipulated in the later lease; and a provision in the later lease in regard to leaving coal pillars in the plaintiff's property being mined as a support for the haulway. It appears that the negotiations continued between Eversole and the Coal & Coke Company, and while there is some difference as to what took place in the interim, it is pretty well agreed that the company's agents would recommend to their superiors, or would themselves bind the company to make a lease for 14 cents per ton. Then followed Eversole's report and transactions with the officers of the defendant, Cornett-Lewis Coal Company, ending with the execution of the contract sued on. Their testimony is that Eversole insisted that the proposed lessee would accept nothing less than 15 cents per ton net. The contract sued on would have given Eversole one-half cent per ton haulage fee, with which the defendant says he was satisfied and it was willing to pay. But his compensation would have been 1½ cents upon the basis of 14 cents royalty, which the defendant proved the Coal & Coke Company was willing to accept and which fact it was claimed Eversole as agent had concealed from his principal, the Cornett-Lewis Coal Company. This concealment and misrepresentation, according to the defendant's evidence, was not revealed to its officers until March 11, 1941, when it received a tentative or proposed draft of his lease direct from the Coal & Coke Company calling for a 14 cent royalty. In May following, the defendant advised the plaintiff that it would repudiate the contract with him unless he would agree to accept one-half cent per ton as compensation or haulage fee. That not being accepted, Eversole did nothing more in the matter so far as the defendant's officers knew.

. For the plaintiff the evidence was to the effect that previous to his entering into the negotiations, which it seems had been intermittent, between the defendant and the U. S. Coal & Coke Company to obtain a lease of this coal, the defendant had been unable to get a royalty agreement of less than 17 cents per ton, but was at all

times willing to pay a maximum of 15 cents. In short, Eversole, through much effort, had obtained from the Coal & Coke Company an offer, or agreement to accept an offer, of 15 cents per ton; but there would have been no compensation for him either for securing the lease or the privilege of hauling out the coal through his property. It is also in evidence that the 280 acres of Eversole coal had been or would soon be mined out, except 30 acres, which it was found had been cut off by reason of a fault. This 30 acres lay next to the 500 acre tract belonging to the Coal & Coke Company, and it appeared that if that could be obtained by the defendant mining company it would be justified in going through the fault. Thus, it was to Eversole's interest also that this lease should be obtained in order that his 30 acres of coal could be recovered. He claimed there was some moral obligation, or, at least, that he was entitled to some sympathy from the U. S. Coal & Coke Company because it had sold him the 280 acres, although neither party had any idea of the existence of the fault.

In short and in fine, the plaintiff's evidence is that he was acting in his own behalf to secure the lease with the defendant as his nominee lessor, and that he never made any misrepresentation to the defendant. There was corroborative testimony. Also, that he had expended much effort in procuring the lease or to enable it to procure the lease.

So we are confronted with a record of contradictory evidence from which it could be concluded that Eversole was acting as agent for the defendant or was acting for himself; possibly also as a broker. If acting for himself alone, none of his representations to defendant as to minimum royalties acceptable to the Coal & Coke Company were legally fraudulent so far as the defendant was concerned. Hieatt Bros. v. Morgan, 209 Ky. 387, 272 S. W. 895. Even so, as we have said, the evidence was conflicting as to whether there were in fact any misrepresentations. Upon all these points we think reasonable minds may differ and do differ. Therefore, under a well-established ruling, this court, being in doubt, chooses to accept the decision on the facts made by the trial judge.

We agree also with the finding of the chancellor that there was a sufficient consideration for that part of the contract providing for the payment to the plaintiff as

stipulated for the privilege of hauling out the coal from the 500 acres through his property, and that it was contemplated by the parties to the lease and the contract that it should be thus taken out. So the appellant's claim that the contract made it optional whether it would do so or would take the coal out in another way, as they have been doing, is not sustainable. The defendant cannot avoid its obligation to pay for the privilege for which promise there was a legal consideration.

On the issue of whether the limitation of 12 months stipulated in the contract relieved the defendant of liability, we think it is shown that by October 23, 1941, it had reached a satisfactory agreement with the Coal & Coke Company upon the terms of the lease. This was 11 months and 11 days from the date of the contract. Whether negligently or intentionally, the fact that the agreement or meeting of minds was not formally subscribed to until after the expiration of the period could not in justice or equity deprive the plaintiff, either as sole agent of the defendant or as a broker or intermediary, nor as the seller of the lease to the defendant, of his compensation under the contract. What a party should have done is deemed to have been done in a case of this sort. Fox v. Buckingham, 228 Ky. 176, 14 S. W. 2d 421; second appeal, 237 Ky. 415, 35 S. W. 2d 897; Cawood v. Hall Land & Mining Co., 293 Ky. 23, 168 S. W. 2d 366, 12 C. J. S., Brokers, section 88.

The conclusions with respect to the above issues clear the case of other questions and grounds upon which a reversal is sought.

The judgment is affirmed.

Judge Dawson not sitting.