## Stice v. Parsley.

(Decided December 14, 1926.)

### Appeal from Edmonson Circuit Court.

1. Elections—Votes of Illiterate, Blind, and Disabled Persons Not Complying with Statute could Not be Counted (Ky. Stats., Section 1475).—Votes of illiterate, blind, and physically disabled persons, who were permitted to vote openly without having been sworn as required by Stats., section 1475, would not be counted.

2. Elections—Votes of Nonresidents for Sheriff Cannot be Counted (Constitution, Section 145; Ky. Stats., Section 1439).—Votes cast by persons in election for sheriff not shown to be residents of county cannot be counted, in view of Constitution, section 145, and Ky. Stats., section 1439, notwithstanding their good faith.

3. Elections—Election of Precinct by Voter Ignorant of Precinct in which to Vote Because of Boundary Lines Being Indefinite Must be Adhered to.—There being doubt as to precinct in which person is entitled to vote because boundary line is not definitely known, voter's election of precinct, while it may not be challenged, must be adhered to.

4. Elections—Votes of Minors would Not be Counted in Election of Sheriff.—Votes of persons under 21 years of age would not be counted in election for sheriff.

5. Elections—Ballots Fraudulently Marked by Person Operating Finger Device would Not be Counted in Election of Sheriff.—Ballots, in election of sheriff, which had been marked by person operating finger device, would not be counted on grounds of fraud.

THOMAS, THOMAS & LOGAN, B. M. VINCENT and MILTON CLARK for appellant.

RODES & HARLIN, RODES K. MYERS and CHARLES E. WHITTLE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This contest over the office of sheriff of Edmonson county between R. H. Parsley, Republican nominee, and Irwin Stice, Democratic nominee, growing out of the election in November, 1925, has been thoroughly prepared by counsel on both sides by the taking of a great deal of proof upon the many questions of fact, and by the preparation and presentation of elaborate and helpful briefs covering every point. On the face of the returns Parsley received 1,843 votes and Stice received 1,793 votes. The certificate of election being awarded Parsley, Stice, alleging many grounds, instituted this contest, which was decided against him below and is on appeal here.

Parsley answered attacking many votes cast for Stice upon different grounds. Among the grounds of contest set up in the petition by Stice are: (1) Parsley failed to file his expense account fifteen days prior to November election, or at all; (2) Parsley violated the provisions of the Corrupt Practices Act; (3) the election officers failed to properly count and certify the vote; (4) the votes in the Steep Hollow precinct should not be counted because the officers of the election left the voting place and ballot books unprotected during the election; (5) that a large number of voters who did not reside in the state, county and precinct the required length of time cast their ballots in the election for Parsley, and that another large number of voters, persons less than twenty-one (21) years or age, voted in said election for Parsley, and their votes were so counted, and all these should be deducted from the Parsley vote; that many other persons voted openly on the table without being sworn and showing their inability to vote in the booth, and that these likewise should be stricken from the Parsley vote.

In addition to traversing the averments of the petition, similar charges to those presented in the petition were made in the answer against the votes cast for Stice.

It is conceded by both parties that a great many persons voted openly upon the table without being sworn as required by section 1475, Kentucky Statutes. Both contestee and contestant set up a long list of names of persons whom they charge to have voted for their opponent openly on the table, without having been sworn, as required by the statute, *supra*, and this constitutes the big-

gest portion of the illegal voting. This open voting was allowed in more than one precinct and it does not appear that the election officers in any of the precincts required the illiterate, blind and physically disabled persons voting to take the oath prescribed by the statute before they were permitted to vote upon the table, or to have their ballots marked by the clerk. Plainly, all these votes were unlawful and the ballots thus cast, so far as they can be identified, cannot be counted for the candidate for whom they were cast, or at all. The contestant, Stice, has proven by the evidence of one or more witnesses in each case that 89 different persons voting in that election for sheriff, voted openly on the table without being sworn and that the ballots were marked for and counted for the contestee, Parsley. He presented other names of voters, some of whom he attempted to prove voted openly on the table for Parsley, but the evidence in all other cases except the 89, was not satisfactory upon one or more points. Sometimes the witness did not know whether the voter voted upon the table, and in other cases the witness did not know for whom the voter voted, and we are, therefore, unable to determine the fact as to how and for whom the voter voted, and to strike these names from the list counted for contestee, Parsley. Generally, in those cases where we have struck the ballot it is shown by clear and convincing evidence that the voter had voted in the election at a certain precinct on the election day; that he voted on the table without being first sworn, as required by the statute, and that his ballot was marked for Parsley and was so counted. In some cases there were as many as four witnesses proving that the voter voted upon the table without first being sworn and that his ballot was marked for contestee and so counted, while in other cases, two and sometimes three witnesses testified to all those facts. However, there were many other cases in which one or more persons who testified that the voter voted upon the table but they did not know for whom, and in other cases the witness did not remember whether the voter voted upon the table. Evidence of like character was introduced in support of the averments in the answer that certain persons voting for contestant, Stice, voted upon the table without being duly sworn. The evidence in this respect was satisfactory as to 79 such voters, and we have accordingly deducted from the contestee, Parsley, 89 votes thus cast and counted for him, and have de-

ducted from contestant, Stice, 79 votes thus cast and counted for him.

Both parties claim that there were a large number of voters who lacked residential qualifications but were allowed to cast their ballots and have introduced proof to establish their claims. Much of this arose out of the fact that the voter did not know in which precinct he resided and was entitled to vote, and some of it arose along the county line where the parties did not know in which county they lived, the exact location of the county line being unknown. The Steep Hollow precinct gave a large majority for contestee, Parsley, and the vote of that precinct is being assailed by contestant on the ground that many of the persons voting there lived out of the precinct and voted for Parsley and they set up and rely upon 29 different ballots as illegal in that precinct. Some of those persons, it is claimed, reside in Sweeden precinct, others in Segal precinct, some in Durban precinct, and some in Brownsville precinct. A map accompanies the record showing the alleged lines of Steep Hollow precinct. The record also contains the boundaries of the various voting precincts as laid off by the Edmonson county court. The correctness of this map, however, is questioned by contestee, who says that the lines are not properly located and that the three different surveys made of the boundary were all different. The evidence, however, shows that the line runs from the Reuben Vincent place on Nolin river, a straight line to Poplar Springs schoolhouse, thence a straight line to the Jimmy Lindsey place, thence a straight line to the Levi Davis place, and all these places are well known and identified. The points are a long distance apart and the lines run partly through woods, making it difficult to survey, but it seems that the map accompanying the record is fairly correct. Assuming that it is correct, about 29 voters who cast their ballots in the Steep Hollow precinct lived outside that precinct at that time, and their ballots cannot be counted. According to the evidence these persons all voted for Parsley, and we must, therefore, deduct 29 votes from Parsley on this account. It is true that a great many of these persons testified and their evidence shows that they have been voting for a number of years in Steep Hollow precinct without objection from anyone; that they believed they resided in the precinct and had a right to vote there; that

there was some confusion about the location of the boundary lines between the voting precincts and that the understanding of those voters was that the lines were located so as to include them in Steep Hollow precinct. This, however, we do not think changes the rule. It is provided in section 1439, Kentucky Statutes, that one possessing the qualifications of a voter "is a voter in said precinct and not elsewhere." The Constitution, section 145, contains exactly the same provision. It would seem that one who does not actually reside in the precinct although he may honestly believe that he does, is not a voter in the precinct, but where the lines of the precinct have never been run and definitely fixed, or the boundaries are not known or ascertainable, weight will be given to the fact that the voter has voted in the precinct without objection, paid taxes and used the schools, and the voter will not be disfranchised under such circumstances. Nunnelly v. Doty, 210 Ky. 642. Where there is any doubt about the precinct in which a voter is entitled to vote because the location of the line is not definitely known, the voter may elect which precinct he will vote in and his right to vote there cannot be successfully challenged, but once his election is made he must stand by it. We dislike very much to disregard the vote of any voter, but the highest law of the land specifically inhibits the voter from voting in any precinct except that in which he resides, and does not make provision for voting in the precinct in which a voter may think he resides or in which he finds it convenient to vote. It is unfortunate, indeed, that the boundaries of the precincts were not definitely known by the voters at the time of the election so that mistakes of this character could be avoided.

Appellant also charged and established by proof that several persons voted for contestee who did not reside in Edmonson county but resided along and near the county line and in another county, and these, of course, must be and have been deducted, but in doing so, we have counted all those voting who lived on the line or so near it that it was not definitely known upon which side of the line they lived, especially where it was shown that they have been continuously voting in Edmonson county.

Then, too, there was another small group of voters who were less than twenty-one (21) years of age at the time they cast their ballots. Six of these voted for Stice

and two of them for Parsley, and we have stricken them from the candidate for whom cast.

The appellee charged and has proven to the satisfaction of the court that 22 straight Republican ballots cast in Bee Spring precinct had been attempted to be changed by some person operating a finger device containing a cross-mark such as a stencil, marking ballots as if the voter had crossed and stamped for Stice. This fraud is so plain, obvious and glaring that the court cannot ignore it. The device must have been attached to the finger of the perpetrator, for in each instance the finger print is just above and to the left of the stencil mark made opposite the name of Stice. Sometimes the cross-mark was not exactly in the square opposite the name of Stice, but above or below or to one side, and was clearly intended by the manipulator of the device to have been marked opposite the name of Stice. It was a glaring and bold fraud, the perpetrator, no doubt, being some over zealous friend of contestant and perhaps acting without contestant's knowledge or consent. Nevertheless these twenty-two ballots counted for Stice must be subtracted from the number returned for him and a like number must be added to the vote of Parsley, because these ballots were all cast for and should have been counted for Parsley, and no doubt would have been so counted but for the fraudulent marking and mutilating of the ballot which misled the officers, or at least some of them, in making the returns. Contestee also established by evidence that certain other voters whose ballots were marked for and counted for contestant, Stice, were illegal and the ballots thus cast should not have been counted for Stice, but it is unnecessary to go further because when all the illegal ballots cast for contestee are subtracted from the total number returned for him contestee has a substantial majority remaining, and when the ballots found to have been illegally counted for Stice are subtracted from the total vote returned for him his pretended majority has completely faded away. Other votes might be deducted from Stice if we should further pursue the evidence with the view of ascertaining definitely just which ones voting for contestant were not legal voters and which ballots counted for him were not properly counted, for some reason and should, therefore, be deducted.

Contestant in his reply brief summarizing the vote, after making certain concessions as to his vote and certain deductions from the vote of contestee, says: "Considering the recount as valid, appellee, Parsley, had a majority of 50 votes over appellant Stice. We easily overcome that numer and here's how we do it:

"Gain for Stice on table votes ..............36
Gain for Stice on Steep Hollow
     illegal votes ...........................................27
Gain for Stice on other illegal
     votes ..........................................................30
Gain for Stice on account of
     exposed ballots ...................................... 4
                                                           ‾‾
Total gain for Stice, ...............................97"

He then says Parsley's gain on account of illegal votes is 13, which, added to the 50, the majority shown on the face of the returns, makes a total of 63. Subtracting 63 from the gain of 97 by Stice leaves Stice a clear majority of 34 votes.

Counsel for Parsley states his conclusion thusly:

"As established by the record 107 illegal votes were cast for appellee, while 113 illegal votes were cast for appellant. Making the deductions required by these illegal votes Parsley received 1,739 legal votes and Stice 1,680 legal votes. The hand of fraud, however, caused the election officers in Bee Spring to count 22 votes which as left by the voter were cast for Parsley, the appellant, and so certified as questioned ballots only in the report of recount.

"Deducting then 22 votes from appellant and the 1 marked ballot and adding these 22 votes to appellee, Parsely's final vote is 1,758, while Stice's vote is 1,657. This gives Parsley a clear majority of 101 votes over the appellant, Stice."

Following contestant Stice's summary, he proceeds to justify the count in his favor of the mutilated ballots in Bee Spring precinct, to which we have called attention, concluding that there is no evidence upon which to base a finding that the ballots should not be counted for Stice, as was done. Of the marked ballots now before us, there are 22 straight Republican ballots which should have been

credited to appellee, Parsley, but which some unscrupulous persons at the time of the counting of the ballots, using a finger device, attempted to mark for Stice as the ballots were taken out of the box, and these ballots so marked were counted for Stice instead of for Parsley. If we deduct 22 ballots thus counted for Stice from the recapitulation made by his counsel we have 75 instead of 97 votes; and if we add 22 to the 63, which counsel for contestant concedes in his brief to Parsley, we have 85, a clear majority of 10| for contestee, Parsley. This we do not regard as correct, but we are of opinion that many more votes should be deducted from contestant, Stice, which would increase the majority for Parsley, but it would draw this opinion out beyond reasonable length to go into a discussion of each ballot contested on the two sides, as is shown by the fact that contestant filed a typewritten brief containing 109 pages, while contestee filed a brief containing 84 typewritten pages, to which contestant replied by two briefs, one containing 35 pages and the other 12 pages of typewritten matter. Then came a rejoinder brief by contestee and later a response by contestant to the rejoinder brief, all ably done and in which we have found great help in determining the many issues of fact and law presented.

A careful investigation of appellant's charge that appellee, Parsley, violated the provisions of the Corrupt Practices Act, and failed to file his expense account, convinces the court that there is no merit in either of these contentions.

Suffice it to say that enough illegal votes counted for contestant have been shown to reduce his total vote below that which is found to have been lawfully cast and counted for contestee, Parsley. For these reasons the judgment of the lower court finding appellee and contestee, Parsley, to have been elected, is affirmed.

Judgment affirmed.