# Rice v. Jones.

(Decided Sept. 26, 1933.)

DAVID BROWNING and H. V. FORSYTH for appellant.

CLYDE R. LEVI for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

F. M. Rice and Harry Z. Jones were candidates for the Republican nomination for the office of magistrate in the Fourth magisterial district of Boyd county. As counted by the county election commissioners, Jones received a majority of 27 votes and was awarded the certificate of nomination. In due time Rice filed his petition contesting the election. A demurrer was sustained to the petition, and the petition was dismissed. Rice appeals.

Briefly stated, the facts pleaded are these: The Fourth magisterial district contains seventeen precincts. In fourteen of these precincts where the ballots were properly prepared contestant received 291 votes and contestee 228 votes. In three other precincts the county clerk, by mistake, inadvertence, oversight, or fraud, caused the official ballots to be printed without the names of contestant or contestee or the names of any other candidates for the Republican nomination for

magistrate in said district. After the voting had commenced in said three precincts and had continued for about two hours, during which time many voters had cast their ballots and left the voting place without having had an opportunity to vote for contestant or any other candidate for magistrate, the county court clerk appeared and delivered to the election officers of the three precincts an unauthorized, illegal, supplemental ballot on which were printed the names of the contestant and contestee and the names of other candidates, and said unauthorized, supplemental ballots were from time to time during the rest of the day illegally issued and delivered to the voters who attempted to vote and deposit them in the ballot boxes of each of the precincts, all of which acts of the county court clerk in failing to cause the names to be printed on the ballots and in preparing supplemental ballots and delivering them to the election officers, and the acts of the election officers in issuing and delivering them to the voters, together with the original ballots, were irregular, illegal, and unwarranted by the election laws of the state, and all of such supplemental ballots issued and cast were void and illegal. Contestant was not informed of such mistake of the county court clerk, and did not know of his mistake or fraud in the preparation of the ballots until about 8 a. m. on the day of the election, and for that reason was unable to proceed as provided by law to have the ballots corrected before they were delivered to the election officers. All the acts of the Board of Election Commissioners in counting said illegal ballots in said three precincts were invalid, and as a result thereof contestant was illegally and wrongfully deprived of his certificate of nomination. All the votes cast and counted in said three precincts were not voted on any legal or official ballot, and should be disregarded and eliminated from the total shown in the official canvass by the Boyd county board of election commissioners. Prior to 8 o'clock a. m. on said election day more than enough voters appeared and voted on ballots which did not contain the names of any candidate for magistrate to change the result of the election, and those voters were deprived of the privilege of voting on any ballot containing contestant's name, and for that reason said election in said three precincts should be thrown out and disregarded. On September 2, 1933, contestant filed an amended petition pleading in substance that he

received 63 more legal votes than were received by contestee, and that he received a plurality of all the legal votes cast.

We shall first consider the contention that the votes cast in the three precincts in question were illegal and should not be counted because the supplemental ballots furnished by the county clerk were not authorized by law. The duty of having ballots printed, bound, and ready for distribution devolves upon the county clerk, and the law requires that he shall furnish 50 per cent. more ballots for each precinct than were votes cast in said precinct at the last state or national election. Kentucky Statutes, sec. 1465. It is also the law that in primary elections there shall be a separate ballot for each political party, and that such ballot shall be printed substantially in the same manner as is provided by law in case of regular elections, with the exception that on the back of each ballot shall be printed the words, "Official Primary Ballot," and at the head thereof shall be printed the words "Official Primary Ballot" together with the proper party name and the party emblem. It is also the law that all the official ballots to be voted in any primary election shall be printed in black ink upon a good quality of white paper, and that the arrangement of each ballot shall be exactly the same for each political party, and that the size and printing shall be the same for each political party. Section 1550-17, Kentucky Statutes, Supplement to 1933. It is not alleged that the supplemental ballots were not printed in black ink upon a good quality of white paper or that the names of the candidates for magistrate were not properly placed or arranged on the ballot. Therefore the only question is, Did the county clerk have the authority to furnish the supplemental ballots? The rule is that, where the deficiency in the number of ballots is due to the inadequacy of the law, the clerk cannot supply them, but, where the deficiency is due to the act of an individual, either through inadvertence or fraud, the clerk may supply the deficiency. Finley v. Rose, 165 Ky. 408, 177 S. W. 433. To the same effect is Scholl v. Bell, 125 Ky. 750, 102 S. W. 248. Here there was no deficiency in the number of ballots required by the statute to be furnished. The case is simply one where the ballots furnished did not contain the names of any candidates for magistrate. This was due to the

oversight or mistake of the clerk or the printer, and, upon discovering the error, the clerk had the power and it was his duty to furnish additional ballots correcting the error. That being true the votes cast upon the supplemental ballots were legal, and were properly counted by the canvassing board.

The other ground on which it is insisted that the three precincts should be thrown out and the supplemental ballots not counted is that, prior to 8 o'clock when the supplemental ballots were furnished, "more than enough voters appeared and voted on ballots which did not contain his (contestant's) name, or the name of any candidate for magistrate to change the result of the election," and "that those voters were deprived of the privilege of voting at all on any ballots containing his (contestant's) name." Even if it be conceded, without deciding, that a case might arise where a delay in furnishing proper ballots might authorize the throwing out of a precinct, it is clear that the allegations of the petition are wholly insufficient for that purpose. Whether or not a particular precinct should be thrown out depends on what took place in that precinct. The petition does not deal with any particular precinct. It uses general language concerning all three of the precincts in question, and does not give the names or the number of voters who voted in each precinct prior to the time the supplemental ballots were furnished or allege how they would have voted if they had had the opportunity to vote. In short, the petition merely states a general conclusion, and does not allege facts showing that more than enough voters appeared and voted on ballots which did not contain contestant's name to change the result of the election.

It follows that the demurrer to the petition was properly sustained.

Judgment affirmed.