## Morgan v. Walker et al.

Nov. 18, 1941.

W. R. Henry for appellant.

J. C. Bird and B. J. Bethurum for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This case involves the validity of a county wide local option election held in McCreary County June 14, 1941; Section 2554c-2 of the Statutes. The "drys" won by a vote of 1,931 to 1,520. The appellant filed a petition contesting the election on several grounds. A demurrer was sustained to the petition, and upon his failure to plead further judgment was entered dismissing it; hence this appeal.

The grounds urged for reversal are: (1) The petition upon which the county court based his order calling the election was not filed as required by law; (2) the petition did not state facts sufficient to give the county court jurisdiction to make the call of the election; (3) a former petition had been prepared seeking to have an election called for March 14, 1941; this petition was abandoned and sheets of names were taken from it and placed under the captions of the new petition upon which the election was called; and (4) no election was held in the West Stearns and North Whitley Precincts, and the failure to hold an election in those precincts changed the result of the election.

The basis of the first complaint is that the petition was delivered to the county judge, who, in turn, directed the county court clerk to file it. It is contended Section 2554c-2 directs that the petitioners must file the petition with the clerk. The section provides that the county judge shall call the election upon application by written petition filed with the clerk of the county court. We think the complaint is groundless, because the statute contains no mandatory provision under which the petitioners must actually place the petition in the hands of the clerk. The manner in which the petition in this case was filed was in full compliance with the statute.

The basis of the second complaint is that the election petition did not show whether or not McCreary County had had a local option election within three years next preceding the time the petition was filed, and it failed to state other jurisdictional facts authorizing the calling of the election. The caption of the petition is as follows:

"To the County Court of McCreary County, Kentucky

"The undersigned duly qualified legal voters of McCreary County, Kentucky, being equal in number to more than twenty-five (25) per cent of the votes

cast therein at the last preceding general election, do hereby respectfully petition the McCreary County Court to order an election to be held and request that same shall be held in said County on the ———day of ———, 1941, for the purpose of taking the sense of the legal voters therein upon the proposition, whether or not, spirituous, vinous or malt liquors, shall be sold, bartered or loaned therein in accordance with the terms and provisions of an act of the General Assembly of Kentucky at its regular 1936 session, now Chapter 1 of the Acts of 1936, known as the 'Local Option Law.' "

The petition appears to be in conformity with the provisions of Section 2554c-2 of the Statutes. The local option law makes no requirement as to the content of the petition, as contended for by the appellant. The "drys" would not be attempting to enforce a local option election if the county was already dry. The local option law expressly provides that an election shall not be held in the same territory oftener than once in every three years. Section 2554c-4. An attempt to call such an election within three years would be futile.

The third complaint can be best understood by quoting the following paragraph from the contestant's petition:

"Contestant further states that the petition aforementioned herein was not signed by at least half of the persons whose signatures are purported to be signed thereto. He says in January, 1941, petitions were prepared by a practicing attorney of McCreary County, Kentucky, to-wit, Hon. Wiley Gilreath, for persons interested in procuring the call of a local option election for said county. These petitions asked that the County Judge of the McCreary County Court call the election for March 14, 1941. They were returned to the County Court too late to obtain a call of the election at the proper time for said date. Thereupon Attorney Gilreath instructed his clients that the petition was 'dead' and that a new petition would have to be prepared. The advocates for the calling of said election became dissatisfied with the services of Attorney Gilreath and proceeded to have some other person or persons, unknown to this contestant, to prepare new petitions. At this time the old petitions prepared by Mr. Gilreath had been

signed by as many as 1000 persons. He states after the failure to file the petitions prepared as set out above some person or persons, unknown to contestant, destroyed or did away with the old petitions, but that loose leaves of signatures of the old petitions were attached to and made a part of the new petitions which the advocates of the said local election had had prepared; that these signatures totalled 1000, all of which had been procured in the months of January and February, 1941. He says the petitions filed herein and on which the order of the election herein was based were filed on March 22, 1941, and had 1000 of the signatures of the old petitions attached thereto, as set out above, and that none of these 1000 persons had any knowledge that their names were being attached to new and distinct petitions from those they had signed during the months of February and January, 1941, nor did any of said signers ever agree or consent to or acquiesce in their signatures being attached to the new petitions, which left the date for the election blank, while the petitions they had signed sought the election for March 14, 1941. He says none of these persons ever saw the petitions filed on March 22, 1941, and on which the order calling the election was granted and that the petitions filed were not signed by more than a 1000 legal voters of McCreary County, Kentucky.''

A demurrer admits well pleaded facts. Puryear v. Webster, 287 Ky. 667, 155 S. W. (2d) 25. The demurrer in this case admitted the allegations as to the manner in which the petition was prepared upon which the election was called. The appellees contend that the petition is regular on its face, and that since it was filed by the contestant as an exhibit it will control when it contradicts the pleading. But the exhibit in this case is not a writing upon which an action is founded. Section 120 of the Civil Code of Practice. It comes within the provisions of Section 128 of the Civil Code of Practice. As said in Noble v. People's Stock & Poultry Feed Company, 189 Ky. 549, 225 S. W. 491, an exhibit such as is referred to in Section 128 of the Civil Code of Practice will neither aid nor impair the averments of a pleading in a case in which it is filed. See also Baker's Adm'x v. Louisville & N. R. Co., 287 Ky. 13, 152 S. W. (2d) 276.

The appellees next insist that the petitioners do not

name the day of the election, and they cite cases wherein the action of the county court in ordering an election on a day other than that set forth in a petition did not render the election invalid. See Horning v. Fiscal Court, 187 Ky. 87, 218 S. W. 989; Skaggs v. Fyffe, 266 Ky. 337, 98 S. W. (2d) 884. But we are confronted with a different situation in this case. Section 2554c-4 of the Statutes expressly provides that:

> "The day upon which the election shall be held may be stated in the petition. If it is not so stated, it shall be designated by the county judge; * * *."

Here it is charged that approximately 1,000 names were obtained to a petition in the months of January and February, 1941, which set forth that the election was to be held on March 14, 1941. This petition was abandoned, according to the allegations of the contestant, and on March 22nd there was filed a petition leaving blank the date of the election and to which sheets of names taken from the first petition had been attached. On the basis of the second petition the election was set for June 14th. This was more than 90 days after the date named in the first petition (March 14th), to say nothing of the fact that the new petition contained the names of approximately 1,000 persons who never signed it and the names of whom were attached thereto without their knowledge or consent. There are obvious reasons why persons might desire to sign a petition calling for an election at a specified time, whereas they would be unwilling to sign one in blank, thereby leaving the setting of the date of the election to the county judge. Under the circumstances we think a reversible error was committed when a demurrer was sustained to this paragraph of the contestant's petition.

We deem it advisable to comment upon the contestant's fourth complaint, namely, that no election was held in either the West Stearns or North Whitley Precincts. The basis of this complaint is that there was no voting place in either of the precincts in question. The petition sets forth that an election for the precincts was attempted to be held in other precincts, the voting places being without the boundary lines of the precincts. These allegations are admitted by the demurrer. Section 1443 of the Statutes makes it the duty of the county court to establish election precincts, and fix the boundaries of

them and the place of voting in each precinct and also provides that there shall be but one voting place in a precinct. That section contains the further provision that for good cause the judges of the election may, on the morning thereof, adjourn it to the most convenient place, after having publicly proclaimed the change and posted notice accordingly. Section 145 of the Constitution and Section 1439 of the Statutes relate to the qualifications of the voters. Each provides that one described as a voter shall vote in the precinct in which he resides and not elsewhere. While the case of Stice v. Parsley, 217 Ky. 653, 290 S. W. 471, 473, had to do with instances where voters near the county or precinct line had followed the practice of voting in a precinct other than the one where it was finally determined they resided, it was said therein:

"* * * We dislike very much to disregard the vote of any voter, but the highest law of the land specifically inhibits the voter from voting in the precinct except that in which he resides, and does not make provision for voting in the precinct in which a voter may think he resides, or in which he finds it convenient to vote. * * *"

Obviously, it was the intention of the legislature that a voting place be located in each precinct, and that a voter be required to vote in the precinct in which he resides. Apparently, what has happened in McCreary County is that, for the sake of convenience of the voters in the two precincts in question, voting places have been established near the line in other precincts. Suffice it to say that it is our view that there must be at least a substantial compliance with the provisions of Section 1443 of the Statutes in the fixing of voting places in the precincts of a county.

Judgment reversed with directions that it be set aside and for proceedings consistent with this opinion.

Whole Court sitting.