## Widick et al. v. Ralston.

October 1, 1946.

Rehearing denied December 6, 1946.

376

L. Bryant, Logan E. Patterson, and R. L. Maddox for appellants.

C. K. Calvert, W. L. Hammond, and Arthur Rhorer for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

A local option election was held in Bell County on May 26, 1945. The final returns showed that prohibition carried by 186 votes.

On June 4, 1945, Fred Silhanek demanded a recount by the Board of Election Commissioners, and such recount reduced the majority in favor of prohibition to 153 votes.

On June 23, 1945, J. K. Ralston instituted this contest proceeding on the ground that in certain named precincts votes in favor of prohibition were cast by persons who had no right to vote where they did, or had no right to vote at all. The nominal defendants in the action were the sheriff and the members of the Board of Election Commissioners. These defendants filed a formal answer to the petition and within the proper time the appellants intervened in the action filing various motions, a general demurrer, and later an answer and counter contest. After the 30 day contest period had expired plaintiff offered three amended petitions. The intervenors likewise offered amendments to their answer and counter contest.

These intervenors represented the cause of prohibition and the real controversy is, of course, between plaintiff below and the intervening petitioners. After the issues were made up much proof was taken, and upon submission the lower court found that a sufficient number of illegal votes had been cast in favor of prohibition to establish that prohibition had been repudiated by a majority of 44 votes.

The intervenors appeal, and as grounds for reversal urge that:

1. The petition was fatally defective and the demurrer should have been sustained.

2. Plaintiff had no right to amend the original petition after the contest period.

3. The contest is barred by the recount proceedings instituted by Silhanek.

4. The court erred in considering in contest the names of certain voters who were not named in the petition but were listed in the intervenors counter contest proceeding.

5. It was error to refuse to permit the intervenors to withdraw the names of certain voters from the court's consideration.

6. The judgment of the court as to the illegality of various votes in favor of prohibition was generally erroneous on the theory that the evidence, as a whole, establishes such fraud and collusion as to authorize the court to ignore the actual testimony of the various persons whose votes were challenged, and the evidence fails to support the findings of fact made by the chancellor.

7. The challenges of a number of votes in the counter contest proceeding were sustained by the evidence, although the lower court found to the contrary.

The appellee was granted a cross-appeal and is complaining that:

1. The lower court was in error in refusing to permit him to file an amendment to his original petition listing additional illegal voters.

2. There was intimidation in one of the precincts of such nature as to void the election in that precinct.

3. The court erred in refusing to take into consideration two votes in favor of prohibition which he claims to have successfully challenged.

These various complaints will be considered in the order named:

1, 2. Appellants' complaints one and two may be considered together. Plaintiff's original petition is paragraphed as to precincts and in each of such paragraphs it is alleged in substance that certain voters cast illegal votes, or voted illegally, in favor of prohibition. In each such paragraph a list of the alleged ineligible voters is given, but there was no allegation as to the reason for the ineligibility of the voter or the illegality of the votes. In each instance these allegations are followed by a general allegation that in the particular precinct mentioned in the paragraph there were numerous other illegal votes

cast and that an amendment would later be filed furnishing the names of such illegal voters. After the contest period had expired plaintiff below offered an amendment which stated with particularity the reason for the illegality of each vote challenged in the original petition. In keeping with the statement in the original petition, an amendment, also offered after the contest period, attempted to add the names of additional illegal voters for prohibition. As stated above, it is appellants' contention that the original petition stated no cause of action and that its defects may not be cured by an amendment offered after the contest period.

The procedure in a local option election contest is the same as that provided by KRS 122.070 for general elections. (See KRS 242.120, and Adams v. Helton, 296 Ky. 9, 175 S. W. 2d 1012.) The pertinent part of KRS 122.070 provides: "The petition shall be filed and process issued within thirty days after the day of election; it shall state the grounds of the contest relied on, and no other grounds shall afterwards be relied upon."

The original petition was undoubtedly defective, and standing alone would be demurrable. In Hogg v. Caudill, 254 Ky. 409, 71 S. W. 2d 1020, 1021, an election contest case, it appeared that various votes had been cast after 4 o'clock. The contestant failed to name the voters who voted after 4 o'clock and state for whom they voted. In considering the sufficiency of the pleading and evidence the court said: "It has been uniformly held by this court, except in Banks v. Sergent, 104 Ky. 843, 48 S. W. 149, 20 Ky. Law Rep. 1024, and in Caudill v. Stidham, 246 Ky. 174, 54 S. W. 2d 654, that in a contest where the ground was the casting of ineligible votes the pleader must name in his pleading the persons whose votes he questions and the ground upon which he bases his objection as well as the facts which rendered them ineligible and sustain his allegations by competent evidence. Thurman v. Alvey, 192 Ky. 341, 233 S. W. 749, and cases cited; Rice v. Jones, 250 Ky. 385, 63 S. W. 2d 474; Combs v. Brock, 240 Ky. 269, 42 S. W. 2d 323; Humbert v. Heyburn, 240 Ky. 405, 42 S. W. 2d 538. In so far as Banks v. Sergent, and Caudill v. Stidham, supra, are in conflict with the principles announced in this opinion, they are overruled."

We again affirm the principles so set forth. However, the real question is the right of the plaintiff below to correct the defects in the petition by an amendment offered after the 30 day period provided by KRS 122.070.

Although the intervenors promptly filed a demurrer to the original petition, no action was taken thereon until the entry of the judgment, at which time the demurrer was overruled on the theory that the amendment had cured the defects. In considering the allegations of the original petition we can not escape the conclusion that a ground of contest was alleged in each of the precincts mentioned, this ground being the illegality of the votes. It is true that the reasons for the illegality of the votes were not stated, but we have concluded that this defect could be, and was, cured by the amendment. Under the express provisions of KRS 122.070 no new or additional grounds of contest may be set up after the expiration of the time allowed therefor. However, we have uniformly held that after the expiration of such time a ground of contest defectively stated within the time may be perfected by amendment. See Wilson v. Hines, 99 Ky. 221, 35 S. W. 627, 37 S. W. 148, 18 Ky. Law Rep. 233; Phillips v. Ratliff, 134 Ky. 704, 121 S. W. 460; Butler v. Roberson, 158 Ky. 101, 164 S. W. 340; Burke v. Greer, 197 Ky. 555, 247 S. W. 715.

In the case of Johnson v. Little, 176 Ky. 505, 196 S. W. 156, 157, Ann. Cas. 1918A, 70, the answer, by way of counter contest, challenged certain votes cast by persons who could neither read nor write, but it was not alleged in the answer that these votes were cast by females. (Under the Statute then in existence this was necessary.) This disqualifying fact was afterwards alleged in an amended answer tendered after the time fixed for the filing of a counter contest. Holding that the amendment was properly filed this court said: ''If the matter set up in the amended answer complained of here were an additional ground of counter contest, it having been filed more than 20 days after the service of the summons, the doctrine of those cases would apply, but the fault in the contention is that the amendment contained no additional ground of counter contest, but only perfected a ground which had been alleged in time, but defectively. In the original answer the persons whose votes were questioned were named, but by inadvertence

of the pleader the fact which rendered those votes illegal (they being females) was omitted. The amendment did not seek to incorporate therein, or to question, other votes besides those mentioned in the original answer, and therefore contained no additional ground in support of defendant's contention.''

We see no distinction between the omissions there and here, and under this rule the lower court properly permitted the corrective amendment to be filed.

3. Silhanek's petition for recount alleges that through mistake the ballots had been miscounted. The prayer of his petition is limited to the demand for a recount, except the usual request for all proper and general relief. There is a clear distinction between an action brought for a recount and a contest proceeding. Wurts v. Newsome, 253 Ky. 38, 68 S. W. 2d 448. The applicable statutes authorize both types of action and permit a contest to be joined with a demand for a recount. Under such circumstances a later contest action can not be entertained, the determination of the joint recount and contest proceeding being res adjudicata. But where, as here, a demand for only a recount of the votes is made and obtained, a subsequent contest proceeding is not barred, provided the contest proceeding is instituted within the specified time. See Kincaid v. Hurst, 287 Ky. 824, 155 S. W. 2d 225, and Berndt v. Fitzpatrick, 300 Ky. 484, 189 S. W. 2d 678. Consequently the Silhanek recount proceeding constitutes no bar to the present contest of the election.

4 and 5 will be considered and determined together. It appears that after the counter contest proceeding was instituted the plaintiff below took the depositions of some of the voters who were challenged by the intervenors and established by their testimony that they had voted illegally for prohibition. These particular voters were not included in the lists set up in the plaintiff's original petition, and one question for determination is whether the contestant may take advantage of his opponent's challenge of these votes. In an amendment tendered after the lower court had the record in this case for consideration, the intervenors attempted to withdraw from the contest the names of all the voters whom they challenged but who testified to facts showing their illegal votes were

cast in favor of prohibition, and a further question for determination is whether this amendment was offered too late.

Formerly this court held that a party to an election contest proceeding must both plead and prove facts to show that illegal votes were cast for his opponent. See Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753. However, in the case of Drennan v. Roberts, 234 Ky. 574, 28 S. W. 2d 735, the court departed from that rule and held that a contestee may take advantage of any ground of contest asserted by the contestant without filing counter contest proceedings. This last opinion was attacked in Hodges v. Murray, 240 Ky. 127, 41 S. W. 2d 923, but was approved and followed without dissent. It therefore appears that it is well settled that either party to an election contest proceeding may take advantage of the contest grounds asserted by his opponont. In Hodges v. Murray, supra, there is dictum to the effect that any disadvantage or injustice resulting by reason of this rule may be overcome by a withdrawal, *before submission*, of the charge that the votes involved were illegal, but that question is not presented in this case.

In the case under consideration the withdrawal amendment offered by the intervenors was offered long after all proof had been taken, and apparently after the case had been orally argued, partially briefed, and at a time when the court had possession of the record for consideration. Although there is no formal order of submission in the record (apparently one was never entered) a statement in the appellants' third brief filed in the circuit court indicates that such amendment was offered at or about the time that brief was filed. We are accordingly justified in saying that this amendment, seeking to withdraw the names of certain illegal voters from the court's consideration, was offered after the case was finally submitted to the lower court for determination. Under the rule, as herein set out, this amendment was offered too late for filing, and the lower court properly rejected it.

6. It is vigorously argued by appellants that the circumstances proven in this case indicate that many of the voters who testified that they voted for prohibition illegally are so affiliated with the opponents of prohibition that the court would be justified in disregarding their own testimony. We have carefully examined the evidence but are unable to agree with this contention. It

may be admitted that in some instances it was established that the voter who was challenged was either an employee or otherwise connected with an operator of some roadhouse or liquor dispensary, and in at least one instance a voter admitted that she worked for and was paid by the "wets" on election day, although she testified that she voted "dry" in accordance with her convictions and rendered her services solely for the money she earned. It is unnecessary to prolong this opinion by a further discussion of this line of evidence. It is sufficient to say that the court has determined that the testimony of the witnesses as to how they voted is sufficient to sustain the finding of the chancellor, the circumstantial evidence being insufficient to raise more than a doubt as to the correctness of the finding of the lower court. See Cornett-Lewis Coal Co. v. Eversole, 301 Ky. 70, 190 S. W. 2d 873; Stewart v. Mitchell's Admr'x., 301 Ky. 123, 190 S. W. 2d 660; Cook v. Hagan, 301 Ky. 346, 192 S. W. 2d 97.

The lower court entered its findings of fact and from them its conclusions of law which have been of material assistance to us in considering this case. In such findings the various individual votes which are challenged are set up under different classifications and in considering the evidence in connection with each voter challenged we have followed the same order as the chancellor followed in the findings. It would serve no purpose even to briefly outline the evidence as to the legality or illegality of each individual voter. Instead we shall take up each group indicating only the names of the voters when we disagree with the trial court.

Group 1. The trial court found that 76 persons voted in favor of prohibition at a time when each was domiciled in a precinct other than that in which he or she voted. See Stice v. Parsley, 217 Ky. 653, 290 S. W. 471; Morgan v. Walker, 289 Ky. 92, 158 S. W. 2d 5, and KRS 117.010. The evidence sustains the findings except as to the following persons:

1. Verlin Thompson
2. Blanche Thompson
3. Herbert Lee Cardwell
4. Woodrow Laws
(5.
(6. Fred Bolton (The lower court considered this voter twice and deducted 2 votes from the drys.

Since we disagree, 2 votes must be deducted from the wet majority.)

7. Christine King
8. Mary Sizemore

Thus, eight votes must be deducted from the wet majority of 44.

Group 2. The court found that 40 persons voted in favor of prohibition and that each of them lacked the domiciliary qualifications of residence either in the state for one year, the county for six months, or the precinct for sixty days. Section 145, Kentucky Constitution. Penny v. McRoberts, 163 Ky. 313, 173 S. W. 786; Branham v. Branham, 276 Ky. 767, 125 S. W. 2d 225. We agree with the court's findings in this respect except as to Sam Gilbert and John E. Irvin. The consideration of these two votes was deferred until all the evidence had been examined, at which time it was determined that it was unnecessary to pass upon their qualifications.

Group 3. The trial court held that 31 votes for prohibition should not be counted because the voters did not live in Kentucky or Bell County at the time of the election. We agree except as to one vote—Cecil Smith. The consideration of the legality of the vote of Cora Young was passed until all evidence was considered, at which time it was found to be unnecessary to pass upon her qualifications. One vote should be deducted from the wets on this account.

Group 4. The lower court found that 15 minors voted in favor of prohibition and therefore deducted that number of votes from the drys. Kentucky Constitution, Section 145. Stice v. Parsley, supra. The evidence supports the finding of the chancellor in each instance.

Group 5. The lower court invalidated 23 votes because the voters exposed their ballots after voting so as to destroy their secrecy. A voluntary or intentional exposure of a voted ballot by the voter violates the requisite secrecy of such ballot, and if it can be shown how such vote was cast it will be eliminated. Stice v. Parsley, supra; Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69. The testimony of an election officer is competent to show how exposed ballots were voted. Clark v. Robinson, 159 Ky. 25, 33, 166 S. W. 801; Johnson v. Caddell, 251 Ky. 14, 64 S. W. 2d 441. Two election officers testified as to

the circumstances under which various voters either voluntarily or intentionally exposed their ballots. One of them kept a list of such voters and submitted that list with his deposition. The trial court did not eliminate all the persons named in that list but we find that the evidence amply supports the elimination of the 23 votes which were invalidated.

Group 6. For various reasons the court found that 25 persons voted illegally in favor of prohibition. These persons were not named in the plaintiff's petition. All of them were challenged by the appellant in the counter contest. Under our rule, heretofore referred to, the court properly considered the contest of these votes, notwithstanding the appellee's attempt to withdraw the names from consideration. We concur in the chancellor's finding as to the elimination of all these votes except those of:

1. Gray Mathis
2. Edgar Jennings
3. William Williams
4. Mrs. William Williams (Jeanette Williams)
5. Dayton Parker

Appellee claims that there are actually 27 voters in this class, but John and Mattie Miner were considered and eliminated elsewhere. (See Group 5.) Thus, an additional 5 votes must be deducted from the wet majority.

Group 7. The court found that 7 voters were not registered in the precinct in which they voted. An examination of the evidence forces us to the conclusion that the judgment of the chancellor in this respect is correct.

At this point we take up some miscellaneous contentions of appellants:

(a) It is contended that the lower court erroneously permitted appellee to file his third amended petition after the contest period had expired for the purpose of correcting a mistake in the original petition as to the names of the precincts in which these persons had voted. We agree with the trial court that this amendment could be filed for the purpose of correcting these mistakes. See Phillips v. Ratliff, 134 Ky. 704, 121 S. W. 460.

(b) The lower court eliminated the dry votes of Joe Jackson and James Williams. These voters were challenged in the original petition but were specifically with-

drawn by the first amended petition. The names were not included in the counter contest suit. Therefore, the court should not have considered these 2 votes and was in error in eliminating them. Accordingly the wet majority will be reduced by these 2 votes.

(c) Willie B. Ewing was included in the original petition. In the first amendment appellee withdrew all names listed in subparagraph 8 of paragraph 8 of the original petition (which included the name of Willie B. Ewing) except those specifically listed under subsection b. of such amended petition, which list does not include the name of this voter. Therefore, an additional vote must be deducted from the wet majority on this account.

7. The lower court sustained appellants' counter contest as to 20 of the votes challenged. On appeal it is insisted that there were other ineligible voters who voted against prohibition. We agree with this contention as to:

1. Shelby Asher
2. George Shelton
3. Martha Smith
4. Robert Shorter
5. Tilman Jones
6. James P. Miller
7. Mary Satterfield
8. Ester Satterfield
9. Willie May Satterfield
10. Margaret Young
11. Harrison Brooks (Brock)
12. Oscar Loop
13. Walter Dalton
14. Leonard Carson
15. James G. Norvell
16. Roscoe Smith

Thus, 16 additional votes should be deducted from the wet majority.

Taking into consideration the elimination of these 16 votes against prohibition and the addition of 17 which the chancellor deducted from the drys, we find that a total of 33 votes should be deducted from the majority of 44 by which the chancellor determined that prohibi-

tion had been repudiated. At this point there is a majority against prohibition of 11 votes. In considering the votes which appellants claim to have successfully challenged, we passed, for various reasons, the determination of the legality of the votes of:

1. Lee Arthur Brown
2. Rosa Brown
3. J. R. Howard, Jr.

In considering the chancellor's findings as to the elimination of various votes in favor of prohibition we likewise deferred consideration of 3 votes. After an examination of all the evidence and the contentions in respect to each individual voter whose eligibility was challenged, we find that the 6 votes which were not passed upon will not affect the determination of this litigation, and it is therefore unnecessary to take these votes into consideration.

Appellants also insist that the results of two precincts should be disregarded in the tabulation of the votes. We have examined the testimony relied on to support such contention but find it is insufficient to overturn the finding of the chancellor.

As pointed out in the forepart of this opinion, appellee raises three questions on his cross-appeal:

1. In support of this contention appellee relies solely on Adams v. Helton, 296 Ky. 9, 175 S. W. 2d 1012, which may be clearly distinguished from the case under consideration. There the court permitted the contestant to supply the names of alleged illegal voters by an amendment to the original petition, *which was offered within the contest period.*

It is well settled that within the contest period a petition may be amended by setting up new or additional grounds of contest, and the opinion in the case referred to merely concurs in that well-established rule, and points out that after the expiration of the contest period the petition may be amended only for the purpose of perfecting a ground of contest which was imperfectly set up originally. We thoroughly agree and have followed this rule in disposing of one of the points under consideration in this case. On the other hand, we have said that an amendment listing additional names of illegal voters may

not be considered as an attempt to perfect imperfect allegations of the original grounds relied upon. An amendment listing additional names of alleged illegal voters sets up additional grounds of contest, and this may not be done after the contest period has expired. See Clark v. Robinson, 159 Ky. 25, 166 S. W. 801; Combs v. Brock, 240 Ky. 269, 42 S. W. 2d 323; Humbert v. Heyburn, 240 Ky. 405, 42 S. W. 2d 538; Dance v. Anderson, 288 Ky. 431, 156 S. W. 2d 463; Jackson v. Bolt, 292 Ky. 503, 166 S. W. 2d 831. Since the subject amendment was offered after the 30 day contest period provided for by KRS 122.070, the trial court properly rejected it.

2. In view of the conclusion reached herein it will not be necessary to dispose of appellee's second contention that there was such intimidation in Junction Precinct as to authorize the court to disregard the result of the votes cast therein.

3. Finally, appellee insists that he successfully challenged two votes for prohibition which the trial court refused to deduct from the proponents of prohibition. We agree with this contention. The evidence of the two voters in question shows clearly that each was under 21 years of age and voted for prohibition. Each would have been 21 years of age at the time of the general election in November 1945. Therefore, each was entitled to register and vote, not only in the 1945 general election, but in the August 1945 Primary election. Since the local option election held in May 1945, is a general election and the two voters at that time were under 21 years of age, they were not entitled to participate therein. Adding these 2 votes to the majority of 11 in favor of the opponents of prohibition, we finally conclude that under the evidence shown by the record in this case prohibition was repudiated in Bell County by a majority of not more than 13, and not less than 7 votes.

The judgment is accordingly affirmed.

Dissenting opinion by Judge Thomas:

I dissent from the majority opinion in so far as it states the law in two important particulars. I consider those statements to be not only in conflict with previous rulings of the court but inconsistent with each other in principle. The correct interpretation of the law on either point, according to my view, would and should re-

sult in a reversal of the judgment, with directions to enter another to the effect that a majority of the voters had favored prohibiting the sale of intoxicating liquor in Bell County.

The first ground of dissent is from the conclusion that the trial court properly permitted the filing by the contestants (to whom I shall refer as the Wets) of an amended petition stating grounds of contest 49 days after the time limit provided by the statute. The second ground of dissent is from the approval of the action of the trial court in rejecting an amendment offered by the contestees (to whom I shall refer as the Drys) withdrawing certain allegations from their counter contest.

1. Separate paragraphs of the contest petition, filed June 23, 1945, related to each precinct of the county. In some of them it was merely alleged that the persons named "had no legal right to participate in said election." In some of them it was only charged that the named persons were "not legal voters in said precinct." In some of them, that "the following voters cast ballots in favor of prohibition when they were each illegal and unqualified voters." The favorite allegation was that the named persons "had no legal right to vote in said precinct." I think they were allegations of the pleader's conclusion of law with respect to the parties named. A pleading consisting only of legal conclusions raises no issue of fact.. Gay v. Johnson County Board of Education, 205 Ky. 277, 265 S. W. 772. These allegations do not state causes of action; do not state facts from which the court could determine the sufficiency of the grounds as a matter of law. It is conceded by the majority opinion that they were demurrable. A pleading is demurrable only when *fatally defective*—when it states no cause of action at all. Of course, in the ordinary civil action, new life may be breathed into a pleading by amendment (in the discretion of the court) after it has been killed by the sustaining of the demurrer. In this case the failure to state a cause of action was the failure to set up grounds of contest, and that could not be done after the expiration of thirty days from the election. KRS 122.070, quoted in the opinion. Nor enlarged, as shown in the later discussion of the cases.

The contestants recognized the deficiency of their original pleading, and 79 days after the election and 49 days after the deadline fixed by the statute, the court

permitted them to file an amendment properly setting up causes of action. Under the statute they should have completed taking evidence in chief 21 days before this amendment was tendered. The amendment is put in the category of curing the defective pleading by making the allegations more definite and specific. That is the remedy when a pleading is subject to attack because its averments are vague or are general statements of fact. A motion to make more definite and specific, or, as in the instant case, permission to file an amendment voluntarily offered to that end, presupposes the existence of a pleading of some fact in a general way. Such an amendment may cure an imperfect pleading—not a fatally defective one. The pleader then presents a fuller statement of his cause of action. He does not supply a cause of action when none had been previously stated. Reid v. Lyttle, 150 Ky. 304, 150 S. W. 357; Daniel v. Daniel, 166 Ky. 182, 179 S. W. 5; Barnett v. Latonia Jockey Club, 249 Ky. 285, 60 S. W. 2d 622.

Here the court holds the parties cured the incurable, the remedy having been applied 49 days too late.

I will now turn to the election contest law.

It is laid down in 29 C. J. S., Elections, Sec. 268(3), page 378: "In a statutory proceeding to contest an election, the *initial pleading,* whether it be termed a declaration, complaint, petition, or notice and statement, *must allege facts which constitute a ground of contest under the statute.*" (Emphasis added.)

In Combs v. Brock, 240 Ky. 269, 42 S. W. 2d 323, 326, concerning general allegations, where neither factual grounds nor names of voters were given, it is said: "We have consistently held that when such elimination of votes from the number certified forms the ground of contest, the names of such illegal voters, *as well as the facts constituting their disqualification, MUST be alleged.*" (Emphasis added.)

In Gross v. Cawood, 270 Ky. 264, 109 S. W. 2d 597, it was held that a motion to strike was properly sustained to portions of the petition "wherein it was *alleged that illegal* votes were cast in the several precints named therein, and where other irregularities of the officers of the election were alleged." (Emphasis added.)

In Brock v. Williams, 260 Ky. 569, 86 S. W. 2d 324, 325, the court held that the demurrer was properly sustained and an amended petition making the allegations of the original more definite and specific was properly *rejected*. The contestant had alleged "in general terms" without names, "that a large number of persons voted openly and publicly; that there was stuffing of the boxes; that there were large numbers of unqualified persons who were permitted to vote, and, in several precincts, that voting was permitted both before and after the hours fixed by statute for keeping the polls open." Said the court: "Each of these allegations was in general terms, and none of the names of the voters was stated, although it will be readily observed that *each of the grounds alleged went* to the question of legality of the votes cast."

And further, "Clearly, to uphold such general allegations would be in effect to ignore or nullify the requirements of the statute as heretofore construed by this court."

As indicated in the majority opinion, we have many cases holding that after the expiration of the time limit set by the statute for filing a contest, the contestant may not amend his pleading to add the names of voters under sufficient allegations of fact constituting grounds of contest; such as, that a number of voters had voted openly without having been sworn as to their infirmities, etc. This is because such original allegations are too general. They are so general and so fatally defective, that a demurrer or a motion to strike a particular paragraph thus setting them up is properly sustained, although it had been charged originally that every vote in the precinct was cast illegally. Jackson v. Bolt, 292 Ky. 503, 166 S. W. 2d 831, which is a Harlan County local option election contest.

In Dance v. Anderson, 288 Ky. 431, 156 S. W. 2d 463, 464, another local option election contest, it was declared that such general allegations were "baseless" and "too vague and indefinite to constitute a ground of contest." Our latest opinion on this point is Bennett v. Cavanah, 300 Ky. 655, 190 S. W. 2d 17. The question there was whether an amended petition definitely stating names of voters under specific allegations of illegality was a new ground of contest. Reviewing previous decisions, they were adhered to and it was again held that

such an amendment did set up enlarged or new grounds. If bringing in additional illegal votes into the proof is a *new ground,* why is not bringing in allegations of *facts constituting grounds new?* The pleader may have just put in his original petition a blanket charge of ''illegal votes'' without having any specific character of illegality in mind, intending later to find some—just as is the expectation to find some additional illegal voters. To fill in the grounds originally omitted is just as much an ''enlargement'' of grounds pleaded as is the adding of names.

It seems to me wholly illogical to say, on the one hand, that omitting names of the voters coming within a statement of facts constituting a ground of contest is fatally defective and not capable of being made more specific after the deadline has fallen, and on the other hand to say and hold to be otherwise a reverse situation where the names are given of persons who it is merely charged ''had no legal right to participate in said election,'' but omitting altogether the reasons why. It seems to me to be wholly illogical to say that in the first class of cases the belated giving of the names sets up a new ground of contest but in the second class the belated giving of facts of illegality of named persons is not a new ground of contest. If the one ruling is right, the other is bound to be wrong.

The same principle of law and the purpose of it are present in each class of cases; namely, that the adverse party may be informed definitely and specifically, so that he may know what he has to meet and that he may prepare his defense promptly, as he is required to do under the contest law. Time is short and of the essence. There were 422 different persons in 33 different precincts listed under these general charges as illegal voters. Should the contestees have prepared to meet evidence that any or all of those persons were nonresidents of the precinct? Or under age? Or not registered? Or felons? Or had voted across the table? Or had exposed their ballots? Or any of the other disqualifications or conditions or acts which would make their votes illegal? Whom should the contestees have searched for, or summoned as witnesses on these points, not knowing upon what ground any of those 422 persons were claimed to have cast illegal votes?

The majority opinion erases according to my view,

from the books a large flock of cases to the contrary. It sanctions a method for evading the statute. It authorizes an entirely new fleet of fishing expeditions. I apprehend that under the license granted by the opinion, future contestants who have no knowledge of any grounds of contest will make similar blanket allegations or state similar general conclusions of law, and follow it with many names, whether those persons were under suspicion or not, in the hope of being able to find one or more grounds for successfully eliminating their votes, and some time along the way—perhaps even longer than two months and nineteen days, as here—then set up grounds of contest by amendment.

The case of Johnson v. Little, 176 Ky. 505, 196 S. W. 156, Ann. Cas. 1918A, 70, is cited to sustain the majority opinion. The writer of this dissent wrote that opinion. I do not think it is controlling; but if I am wrong in this thought, then the opinion should be overruled to that extent. The point was a trivial one in a trifling case. The case involved the election of a subdistrict school trustee. Under the law then prevailing, such elections were held at the school house on a Saturday afternoon. The voters then and there chose a judge and a clerk as election officers and voted viva voce. The law permitted women to vote in such elections if they could read and write and possessed the constitutional qualifications. It was alleged in the contest petition that certain named persons could not read and write but had voted for the election officers and the trustee. A recent examination of the record shows that these persons bore the names of Mary, Esther, Cordia and other female names, which were sufficient in and of themselves to identify the persons as women. An amended petition merely stated that they were "females," which allegation had been inadvertently omitted. The court held that the amendment was properly filed although the time for filing a contest had elapsed. It was unnecessary. In any event the same result would have been reached in that case had the point been decided otherwise.

Here we have no trivial matter and no trifling case. It is a decisive point. The election was upon an important public, moral issue which affected every man, woman and child in Bell County. There have been two or three local option elections there. The many cases reaching this court, and a number of others before its members

upon motions relating to temporary injunctions and not reported, reflect the long trail through the courts, with the pace tragically slowed down by dilatory tactics and tangled obstructions, to obtain the prohibition of the sale of intoxicating liquors.

2. I am also of the opinion that the trial court committed an error in rejecting the amendment to the countercontest of the Drys, withdrawing certain allegations. During the long course of taking many depositions, 27 persons whom the Drys had charged voted wet illegally, as specifically described, testified that they had voted dry. I have no doubt that many of these persons did not tell the truth. Thus, one woman who was employed as a barmaid in a roadhouse and worked at the polls for the Wets, when proved to have voted without legal right, testified that she had voted dry because she was asked to do so by some unidentified preacher. It is hard to believe that with the diligence, zeal and energy with which the Wets had prepared and fought the contest—going through every precinct with a fine tooth comb—they would have overlooked this many illegal dry votes. It is hard to believe, on the other hand, that the Drys, also alert and active, did not have substantial reasons to believe that these persons had voted wet before they challenged their votes in their verified pleading. They might have been mistaken in a few instances, but not en masse. When the taking of depositions had been completed, and while the parties were filing exceptions to them and otherwise getting their case in order, the Drys tendered an amendment to their countercontest, withdrawing their allegations as to those 27 whom they had challenged, but which the Wets had not done. An order of September 18, 1945, recites that the motion of the Drys to submit the case was passed for later consideration. The case was kept open for the filing of amendments, depositions, exceptions and briefs. No order formally submitting it was ever entered. An *entire month elapsed* after this amendment was tendered *before the judgment.*

In Hodges v. Murray, 240 Ky. 127, 41 S. W. 2d 923, 926, the same situation confronted a contestant. This court showed him how he might have escaped the dilemma by saying that he might have withdrawn his charges by amending his pleading. In doing so the court laid down a rule of practice for future litigants. It is true that it

is said in this connection that, "A litigant can at any time before final submission withdraw a pleading or a part of a pleading." That is ordinarily the time for amending a pleading or taking other preparatory action. But the court did not say, or even intimate, that unless the motion was made before submission it could not be sustained. To have done so would have been right in the face of section 134 of the Civil Code of Practice and a multitude of decisions. In Campbell v. Combs, 273 Ky. 404, 116 S. W. 2d 955, 957, a local option contest, it is said: "The rule of practice whereby the court may *at any time* permit amendment of pleadings in the furtherance of justice, section 134, Civil Code of Practice, is applicable in election cases unless some new cause of action or additional ground of contest is set up after the period of limitations." (Emphasis added.)

In Adams v. Helton, 296 Ky. 9, 175 S. W. 2d 1012 (one of the several local option cases from Bell County), it was held specifically that in an election contest the petition may be amended *at any time,* even after the expiration of the thirty days provided for filing a contest, in order to perfect a ground of contest imperfectly set up originally. A distinction is there noted between other amendments and those setting up new or additional grounds of contest, which, it is pointed out, must be within the thirty day period.

In the present case the filing of this amendment clearly came within the rule always followed to permit a litigant to amend his pleading at any time before judgment in order to have it conform to the proof.

The right to file an amended pleading after the adversary has responded to the original is not an absolute one, of course. Nor is the authority of the court in respect thereto a matter of arbitrary decision. It is a discretion that is to be exercised reasonably, fairly and impartially. The record shows that the Wets were supposed under the statute to have completed their proof in chief on July 23. They were permitted to file three different amended petitions after that date. One on July 28, 63 days after the election, withdrawing certain paragraphs of their petition and seeking to add names of persons charged to have voted dry illegally. Another was filed on August 13, 79 days after the election, which I have already discussed. Another was filed on November 23, 181

days after the election, transferring from one precinct to another certain alleged illegal dry votes.

I think there was a grievous abuse of judicial discretion in refusing the amendment of withdrawal tendered by the Drys.

There is an old saying, "What is sauce for the goose is sauce for the gander." That is a pretty good and certainly a fair rule of consistency to be observed in the trial of a lawsuit by both the trial court and the appellate court. The filing by the Wets of the amended petition setting up grounds of contest or, as the majority say, curing a fatally defective · pleading, was, in my view, right in the teeth of the statute forbidding it. The rejection of the amendment offered by the Drys withdrawing certain allegations was also right in the teeth of an opinion of this court authorizing that to be done when that specific authority is read in connection with other decisions in local option election contests. This court should not refuse to look at the realities of the situation in Bell County and so apparent in this case. It should not refuse to regard all the specific conditions displayed in the record, and all the circumstances, lights and shadows so apparent in it.

I therefore respectfully dissent, in which Chief Justice Rees concurs as to the first ground.

Partially dissenting opinion by Judge Siler.

I agree with Judge Thomas in the first ground of his dissenting opinion set out above. His reasoning and legal conclusions appear to be sound. Ample and sufficient legal authority seem to support his opinion that the trial court committed prejudicial error in permitting appellee to file an amendment to his pleading 49 days after the limitation terminus fixed by statute, the effect of such ruling of the trial court being to permit the appellants, the election contestants, to ,set up grounds of contest that they completely refrained from revealing in their original pleading. This litigation of contestants began with a pleading pregnant with decadent and meaningless conclusions rather than with the vibrant facts necessary to sustain its legal life. And undoubtedly the contestants lingered too long in bringing forth the amendment that gave their cause the vitaminic nutrition necessary to sustain its vitality in a court of law.

The second ground of the dissenting opinion is out of harmony with my own views.

It appears that appellants wished to back off from the position originally assumed by them. Appellants originally said voters X, Y and Z were nonresidents, for example, and were therefore illegal; that they voted for the "wet" side; that the particular votes cast by them should accordingly be stricken from the total tabulation on that side of the question. Later, the evidence having supported appellants in all matters pertaining to voters X, Y and Z, except in the matter of their manner of voting, the appellants sought to take them entirely out of the contest and beyond judicial consideration in this case through appellants' offered amendment. I believe this could not be done legally. This court is a branch of our state government. It is neither "wet" nor "dry," but it is merely a governmental branch set up as a part of a system constituting our body politic as a whole. As an individual citizen, I am "dry" in principle, practice and belief, but as a judge and a member of this court I am neither "wet" nor "dry" but rather an impartial judicator holding the unbiased judicatory scale. In this position, I am interested only in sensing the majority's will as expressed at the polls on the face of the best evidence before me produced on this trial. This best evidence, not refuted by probative testimony, indicates that voters X, Y and Z voted "dry" and illegally. Who am I, endowed with a merely finite mind, to reach out into the realms of unreasonable speculation and conclude that voters X, Y and Z perjured themselves on this trial? Their votes were a part of the *sense* of the people involved and they must be considered and kept within the voting tabulation of this case, even though my personal sentiment directs the contrary. My judgment demands their retention. The trial court was not in error, as I see it, in overruling appellants' motion to file their amendment seeking to eliminate the votes of X, Y and Z from the court's consideration in reaching a decision in this case. It was within the trial court's discretion to overrule the appellants' offered amendment in the furtherance of justice. What was the justice of this case? Certainly not what I personally may have desired. Justice in this case was the carrying out of the sense of the majority of the electorate as established by all the legal evidence

produced on the trial. The trial court correctly exercised its discretion in overruling appellants' motion to file an amendment eliminating the votes of X, Y and Z from evaluation in this case, according to my own judicial view.